### In re HUGHES–BECHTOL, INC., Debtor.

### HUGHES–BECHTOL, INC., Plaintiff,

v.

The STATE OF OHIO, The Ohio Building Authority, The Department of Administrative Services, Division of Public Works, The State Architect, Division of Public Works, Lorenz & Williams, Inc., KZF, Inc., a Joint Venture, Lorenz & Williams, Inc., KZF, Inc., Ruscilli Construction Company, The Sherman R. Smoot Company, a Joint Venture, Ruscilli Construction Company and The Sherman R. Smoot Company, Defendants.

Bankruptcy No. 3–88–02492.
Adv. No. 3–89–0309.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Feb. 20, 1991.

Mark T. D'Alessandro, Columbus, Ohio, for Ohio Bldg. Authority.

Mark K. Merkle, Jr., Columbus, Ohio, for Ruscilli Const. Co./The Sherman R. Smoot Co., Inc., a Joint Venture.

Thomas R. Noland, Robert Bruce Shearer, Dayton, Ohio, for debtor.

Dan E. Belville, Columbus, Ohio, for Dept. of Administrative Services, Division of Public Works and the State Architect, Div. of Public Works.

John G. Witherspoon, Jr., Gordon D. Arnold, Dayton, Ohio, for Lorenz & Williams, Inc., and co-counsel for Lorenz & Williams, Inc. and KZF, Inc., a Joint Venture.

Thomas S. Shore, Jr., Jeffrey S. Routh, Cincinnati, Ohio, for KZF, Inc. and co-counsel for Lorenz & Williams, Inc. and KZF, Inc., a Joint Venture.

## DECISION ON ORDERS GRANTING AND DENYING MOTIONS TO DISMISS AND MOTIONS FOR A DEFINITE STATEMENT

THOMAS F. WALDRON, Bankruptcy Judge.

This proceeding involves determinations of the defendants' motions to dismiss and other motions directed to the debtor-in-possession's complaint seeking damages based on alleged causes of action in contract and tort and violations of the automatic stay.

### I. PARTIES

The plaintiff, Hughes–Bechtol, Inc., "debtor", is the debtor-in-possession in a case filed on August 3, 1988, under chapter 11 of the Bankruptcy Code. The debtor filed a complaint initiating this adversary proceeding. Several defendants were named, including the State of Ohio, the Ohio Building Authority, the Department of Administrative Services, Division of Public Works, the State Architect, Division of Public Works, Lorenz & Williams, Inc., KZF, Inc., a joint venture composed of Lorenz & Williams Inc., and KZF, Inc., Ruscilli Construction Company, the Sherman R. Smoot Company, and a joint venture composed of Ruscilli Construction Company and the Sherman R. Smoot Company. The debtor's complaint alleges that, pursuant to a contract with the State of Ohio, the debtor was responsible for the installation of a Heating, Venting and Air Conditioning System in a prison, the Warren Correctional Institution at Lebanon, Ohio, the "project".

The defendant, the Ohio Building Authority, "OBA", issued bonds to raise revenue to pay for the construction of the prison. The defendant, the Ohio Department Of Administrative Services, Division of Public Works, "DAS", and the Ohio State Architect, Division of Public Works, "SA", pursuant to a contract, engaged the services of the defendants Ruscilli Construction Company and the Sherman R. Smoot Company, Inc., as the State of Ohio's general agents for the overall supervision of construction of the prison and for coordination of the work to be performed by various contractors, including the debtor, in completion of the project.

The defendants, Ruscilli Construction Company and the Sherman R. Smoot Company, Inc., "Ruscilli/Smoot", formed a joint venture for purposes of carrying out the contract with the State of Ohio. The contract documents refer to Ruscilli/Smoot as the project manager, "PM", and the court will adopt the designation, "PM", for the defendants, Ruscilli Construction Company and the Sherman R. Smoot Company, Inc. The court notes that although Ruscilli Construction Company and the Sherman R. Smoot Company, Inc. are each named as separate defendants, all motions, responses, and replies have only been filed in the name of Ruscilli Construction Company/The Sherman R. Smoot Company, Inc., a Joint Venture.

The defendant, Lorenz & Williams, Inc., "Lorenz", is a firm of architects. The defendant, KZF, Inc., "KZF", is a firm of engineers. These companies formed a joint venture and, pursuant to a contract with the State of Ohio (Doc. 74), were referred to as the Associate Architect, "AA". The court will adopt the designation, "AA", for the defendants Lorenz & Williams, Inc. and KZF, Inc.

### II. FILINGS

The debtor filed a Complaint (Doc. 1), Plaintiff's Response To Defendants' Motions To Dismiss (Doc. 45), Response Of Plaintiff Hughes–Bechtol, Inc. To The Reply Memorandums Of Defendants The State Of Ohio, Department Of Administra-

tive Services, Ruscilli–Smoot Joint Venture, The Ohio Building Authority, KZF and Lorenz & Williams, Inc. (Doc. 64), and Supplemental Brief Of Plaintiff (Doc. 81).

The defendant, OBA, filed Defendant Ohio Building Authority's Motion To Dismiss (Doc. 17) and Reply Brief Of Defendant The Ohio Building Authority To Plaintiff's Response To Defendants' Motions To Dismiss (Doc. 49).

The defendants, DAS and SA, filed Defendants Ohio Department Of Administrative Services' And The State Architect's Motion To Dismiss (Doc. 14) and a Reply Memorandum Of Defendants Ohio Department Of Administrative Services And Ohio State Architect To Plaintiff's Response To Defendants' Motion To Dismiss (Doc. 51).

PM filed Motion Of Defendant Ruscilli Construction Company/The Sherman R. Smoot Company, Inc., A Joint Venture Composed Of: Ruscilli Construction Company And The Sherman R. Smoot Company, Inc., To Dismiss Complaint, Or Alternatively, To Determine Whether Proceeding Is A Core Proceeding; And To Abstain (Doc. 43), a Reply Memorandum Of Defendant Ruscilli Construction Company/The Sherman R. Smoot Company, Inc., A Joint Venture Composed Of: Ruscilli Construction Company And The Sherman R. Smoot Company, Inc. (Doc. 56), the Response Of Defendant Ruscilli Construction Company/The Sherman R. Smoot Company, Inc., A Joint Venture Composed Of: Ruscilli Construction Company And The Sherman R. Smoot Company, Inc., To Plaintiff's March 27, 1990 Response (Doc. 68), and a supplemental brief (Doc. 82).

The defendant, Lorenz & Williams, Inc., filed a Motion To Dismiss Of Defendant Lorenz & Williams, Inc., Or, In The Alternative, Motion For More Definite Statement (Doc. 27) and the Reply Memorandum Of Defendant Lorenz & Williams, Inc. In Support Of Its Motion to Dismiss Or, In The Alternative, Its Motion For A More Definite Statement (Doc. 58).

The defendant, KZF, Inc., filed Defendant, KZF, Inc.'s Motion To Dismiss (Doc. 32), a Reply Memorandum Of Defendant, KZF, Inc. To Plaintiff's Response To De-

fendant's Motion To Dismiss (Doc. 52), and a supplemental brief (Doc. 83).

The defendant, Associate Architect, filed a Motion Of Lorenz & Williams, Inc. And KZF, Inc., A Joint Venture, To Dismiss Complaint Of Plaintiff And/Or To Make Definite (Doc. 31) and Reply Memorandum Of Lorenz & Williams, Inc. And KZF, Inc., A Joint Venture, To Plaintiff's Response To Defendant's Motion To Dismiss (Doc. 53).

The court considered all of the above filings, together with the oral arguments of counsel, in reaching its decision; however, on December 12, 1990, this court entered an Order Governing Filings (Doc. 80), which fixed December 28, 1990 as the last date for filing "a single supplemental brief" and also provided "no further filings, whether by correspondence or otherwise, shall be permitted." Accordingly, the filing titled "Supplemental Brief of Defendant Lorenz & Williams, Inc. (Doc. 85)" was not considered by the court in reaching this decision. Similarly, the plaintiff's Motion To File Amended Supplemental Brief (Doc. 87) is DENIED. Although this court has no desire to increase its docket, further filings in violation of this court's orders invite hearings to determine sanctions. *Matter of Wright,* 68 B.R. 660, 663 (Bankr. S.D.Ohio 1986).

### III. ISSUES PRESENTED

Although some of the motions suggest that it is appropriate, at this stage of this proceeding, to resolve issues of abstention and core or non-core, it must be noted that the only pleadings before the court are the debtor's complaint and the various motions of the defendants. No defendant has filed an answer. The court determines that, because the parties have not been required to address these issues, it would be premature to enter determinations concerning abstention and core or non-core; however, the court does enter a limited determination that this decision resolving the pending motions to dismiss is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (O). *Matter of Commercial Heat Treating of Dayton, Inc.,* 80 B.R. 880, 886–87 (Bankr.S.

D.Ohio 1987); *In re Inland Shoe Mfg. Co., Inc.*, 90 B.R. 981, 983 (Bankr.E.D.Mo.1988).

Accordingly, the court determines that the only issues presented for decision by the defendants' motions are whether this court has jurisdiction to consider the debtor's complaint, whether the doctrine of sovereign immunity prevents the debtor from obtaining relief against any of the defendants, and whether the doctrine of privity prevents the debtor from obtaining relief against any of the defendants comprising PM or AA. The court notes that the defendants, Lorenz and AA, have also filed motions requesting that a more definite statement be made by the debtor (Doc. 27, Doc. 31).

## IV. THE COMPLAINT

The debtor's complaint alleges that on January 15, 1987, it entered into contract number 501–84–186–16, "the contract", with the State of Ohio to install a Heating, Ventilating and Air Conditioning System (HVAC) at the Warren Correctional Institution in Lebanon, Ohio for the sum of two million, eight hundred and forty-one thousand, five hundred dollars ($2,841,500.00). A copy of the contract is attached to the debtor's complaint. The contract provides, in relevant part, that the agreement was made between the debtor and the "State of Ohio, Department of Administrative Services, through the Deputy Director for the Division of Public Works acting as set forth in Chapter 123 and Chapter 153, Ohio Revised Code." The installation was to be in the "Form of Proposal dated November 6 and 7, 1986, and Addenda Nos. 1, 2, 3 and 4, in strict accordance with plans and specifications and form of proposal on file in the office of the Deputy Director for the Division Of Public Works, prepared by Lorenz and Williams, 423 East Town Street, Columbus, Ohio 43215, which plans and specifications and form of proposal are made a part of this contract."

Specific paragraphs of the contract in pertinent part provide:

Article 2:

The Deputy Director shall furnish the contractor such further drawings or explanations as may be necessary to detail and illustrate the work to be done and the contractor shall conform to the same as a part of the contract so far as they may be consistent with the original plans and specifications referred to and identified as provided in Article 1....

Article 3:

No alterations shall be made in the work shown or described by the plans and specifications, except upon the written order of the Deputy Director, and when so made, the value of the work added or omitted shall be computed or approved by the Deputy Director, and the amount so ascertained shall be added to or deducted from the contract price.

Article 5:

Should the contractor at any time refuse or fail to supply sufficient properly skilled workers, or sufficient materials of proper quality, or persistently disregard written instructions of the PROJECT MANAGER or Architect, or fail to prosecute the work with promptness and diligence, or otherwise be guilty of substantial violation of any provision of the contract, the Deputy Director shall give written notice to the contractor of such failure....

Article 6:

The contractor shall complete all work contemplated under this contract within 455 consecutive calendar days in accordance with the construction schedule established in the specifications and as directed by the PROJECT MANAGER.

Article 8:

... The time fixed for the completion of the work shall be extended for a period of time equal to the time lost by reason of any or all causes enumerated in this section, provided the contractor shall within ten days from the beginning of such delay notify the PROJECT MANAGER, in writing, of the cause of the delay, and the PROJECT MANAGER shall acknowledge receipt of said notification, in writing, to the contractor....

Article 12:

> ... TOTAL AMOUNT OF THIS CONTRACT IS TWO MILLION EIGHT HUNDRED FORTY–ONE THOUSAND FIVE HUNDRED DOLLARS AND 00/100 ($2,841,500.00) subject to any additions or deductions during construction.... Partial payments to the contractor for labor performed under either a unit or lump sum price contract shall be made at the rate of ninety-two percent of the estimates prepared by the contractor and approved by the PROJECT MANAGER. All labor performed after the job is fifty percent completed shall be paid for at the rate of one hundred percent of the estimates submitted by the contractor and approved by the PROJECT MANAGER....
>
> ....

The contract was subject to a bond executed by Ohio Farmers Insurance Company as surety for the debtor. After filing for relief under chapter 11 of the Bankruptcy Code on August 3, 1988, the debtor continued to perform the contract. In its complaint, the debtor alleges (para. 3) that it was one of eleven contractors employed to complete the project which was to be owned by OBA. In order to construct this project, the State of Ohio chose to use the "construction manager" system of contracting, under which the State of Ohio appointed the defendants comprising PM. PM was hired as a general agent with the responsibility of overall supervision of the project and the performance of the critical functions of coordinating the work of all of the various contractors and implementing the design which was the basis for the bid submitted to the State of Ohio.

The complaint further alleges that AA was to provide "technical consultant services by contract to the State of Ohio to carry out the duties assumed by the State of Ohio under Article 2 of the contract between the Plaintiff and the State of Ohio" (para. 7). Pursuant to Ohio Revised Code § 153.01(D), the design of the project required AA to submit accurate plans, estimates, bills, materials, and details to scale which would be "[d]efinite and complete specifications of the work to be performed, together with such directions as will enable a competent mechanic or other builder to carry them out and afford bidders all needful information" (para. 8).

More specifically, the debtor has asserted nine counts which in relevant part are as follows:

COUNT I: The debtor asserts that PM either failed to perform the required review of the project design plans, or if it did perform the review, it failed to discover that the design for the work to be performed by the debtor was defective and could not be performed in the manner reasonably contemplated by bidders, including the debtor. Further, the debtor asserts that AA negligently performed its duties arising from the design it furnished to the State of Ohio, and attempted to hide its negligence by forcing the debtor to work without the additional drawings contemplated by Article 2 of the contract. It is alleged that PM aided and abetted this scheme. The debtor asserts that the negligence of AA and PM resulted in the breach of warranty of the adequacy of the plans and specifications for construction of the Warren Correctional Institution. Further, the debtor asserts that SA either did not perform the statutory review required by O.R.C. § 153.04 or performed a review which compounded the negligence of the designer by approving the plans. The debtor concludes that as a result of the negligence of PM, AA, and SA, it did not complete the project within the time period set forth in the contract, and that as a result of these parties' negligence, the warranty of adequacy of the plans and specifications was breached, damaging the debtor in the amount of one million, twenty-one thousand six hundred, and thirty-four dollars ($1,021,634.00).

COUNT II: The debtor asserts that the State of Ohio breached its implied warranty that it would cooperate with the debtor and cause its agents to do likewise, and not interfere with or hinder the debtor in the performance of the contract.

COUNT III: The debtor asserts that it relied upon O.R.C. § 153.01 and the Bid Documents as a whole, and the warranty

that the project could be built to the design on which bids were solicited and in a time frame specified for the project. Further, the debtor states that all of its communications, including any communications directed to the State of Ohio Deputy Director, SA, or AA could be made only through PM; however, PM failed to inform the State of Ohio that the plans of AA had been negligently prepared. In addition, the debtor alleges that when it informed PM that the plans and specifications were defective, PM, without reference to appropriate standards of contract interpretation, informed the debtor that the applicable deficient drawings were suitable for construction, notwithstanding the clear fact that they were not suitable under the circumstances and that such an interpretation was in clear violation of the duties made mandatory by O.R.C. § 153.01. Further, the debtor asserts that it continued to inform PM of the errors existing in the design work and of the consequential increases in the time and cost to it; however, PM, even though the debtor had a right to an adjustment of the cost and time of performance, told the debtor to "[m]ake it fit." Jim Baumgardner, the on site employee in charge for PM, acknowledged at a "hearing," held at the office of the Deputy Director of the Department of Administrative Services, that he had issued this instruction to the debtor. As a result of PM's instructions to "make it fit", the debtor was required to work out of sequence, to change its work plan, and to perform work over a period of approximately 820 days because of the conditions at the site as a result of deficiencies in the plans and specifications. Additionally, the debtor asserts that PM negligently failed to follow the procedures set forth in the contract and negligently failed to inform the State of Ohio that the plans of AA were negligently prepared and were therefore defective. Further, the debtor alleges that although other changes were made under the Change Order Procedures outlined in the contract, none of the changes affected the deficiencies reported by the debtor. The debtor concludes that because of these combined acts of negligence by the agents of the State of Ohio, it was "unable to perform the contract upon which bids had been submitted and to perform work outside any schedule which might reasonably have been contemplated by the parties at the time of execution of the contract."

COUNT IV: The debtor alleges that as a result of the combined negligence and willful actions of the State of Ohio and its agents, the contract became impossible to perform. Nonetheless, PM, working in concert with AA and other agents of the State of Ohio, who are known only to PM, negligently and/or willfully refused to grant the debtor any relief under the contract and continued to enforce the contract by means of threats and harassment. Further, the debtor contends that it had the right to rely upon the warranty of adequacy imposed upon AA that the contract drawings and specifications would provide the basis for a reasonable bid which could be calculated in accordance with acceptable industry standards. In addition, the debtor alleges that PM was negligent for failing to give it the opportunity to point out the errors in AA's statements, and, working in concert with AA, PM willfully and/or negligently damaged the debtor. Further, the debtor asserts that PM negligently failed to cause appropriate actions to be taken to coordinate the work or to require AA to provide the technical guidance necessary to allow the debtor to perform its contract or to benefit from an equitable adjustment provided by the contract of the cost, manner of performance, and time required for the accomplishment of the work which had to be done and was damaged.

COUNT V: The debtor asserts that the State of Ohio and the other defendants, acting singularly and/or in concert, negligently and/or willfully performed their duties under the contract in a manner which made it impossible for the debtor to achieve the intended profit allowed by the contract. In addition, by treating all the debtor's changes as not coming within the emergency provisions provided by the contract, the defendants arbitrarily and negligently administered these provisions as to make the State of Ohio's actions unconscionable. Further, the debtor alleges that

the actions of the State of Ohio and its agents were dilatory, incomplete, and imposed an undue hardship on the debtor. Additionally, it is asserted that the State of Ohio and its agents were unreasonable and arbitrary in performing the duties upon which the debtor's success depended. Also, the debtor alleges that throughout the contract the State of Ohio and its agents delayed the debtor in the performance of its contract and refused to make adjustments to which the debtor was lawfully entitled and that, by failing to apply the contractual Emergency Change Orders, the "defendants arbitrarily and negligently administered these provisions as to make the State of Ohio's actions an unconscionable act."

COUNT VI: The debtor asserts that PM and AA wrongfully, arbitrarily, and negligently administered the Change Order Procedures in the contract in such a way as to convert the authorized changes into "constructive changes" and required it to perform changes in such a manner as to convert those changes into "cardinal changes." Further, the debtor alleges that the conduct of the State of Ohio and its agents, by acting and administering the Change Order Procedures of the contract wrongfully, arbitrarily, and illegally, destroyed the "mutuality of obligation" essential to the formation of the contract.

COUNT VII: The debtor alleges that at a hearing, provided for pursuant to O.R.C. § 153.12, held by the Deputy Director on December 15, 1988, the debtor presented evidence which demonstrated that due to the negligence of AA in the preparation of the drawings and specifications, its sheet metal work was radically changed and that its costs were unconscionably increased as a direct and proximate result of the combined negligence of SA, AA, and PM. The debtor asserts that it presented this evidence, but it was not accepted by the Deputy Director; and, further, the Deputy Director used evidence which was not presented to it at the hearing to reach its decision. As a result, the debtor alleges that this hearing constituted a breach of the contract. The debtor asserts that for each of the agents to work in concert and to completely ignore the procedures and rights granted it by statute is a breach of contract, which constitutes lack of good faith and willful misconduct of all of the agents of the State of Ohio. In addition, the debtor asserts that PM, who was its sole contact point with the State of Ohio, failed in its duty to fairly evaluate the debtor's claim, and that this failure constitutes willful misconduct and lack of good faith. Further, the debtor alleges that each of the agents communicating with PM and the Deputy Director also obligated themselves by contract and professional duty to fairly evaluate the debtor's claim and failed in this duty.

Count VIII: The debtor asserts that the payments it was owed were not made until after a significant delay, and were paid without interest as provided for in O.R.C. § 153.12(A). It is alleged that the State of Ohio continued this practice after the debtor filed for relief under chapter 11 of the Bankruptcy Code. Further, the debtor asserts that additional requirements other than performance were placed upon the debtor. In addition, it is alleged that the State failed to put the money in escrow as provided by O.R.C. § 153.63(A) and that the State's holding of these funds is contrary to O.R.C. § 153.12 and 11 U.S.C. § 362(a)(3).

COUNT IX: The debtor asserts that the State of Ohio and its agents' failure to comply with the statutory requirements set forth in the Ohio Revised Code constitutes an intentional act to cause the building of these facilities based upon less than accurate plans and definite and complete specifications, causing it to bid on work substantially less than that required to perform the job intended. In addition, the debtor asserts that the State's course of conduct was intentional or recklessly negligent.

## V. DISCUSSION

Each defendant has filed a motion to dismiss. A motion to dismiss a complaint for failure to state a claim upon which relief can be granted (Bankr.R. 7012(b)) is judged by the familiar standard that a com-

plaint should not be dismissed on this ground unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In reviewing the complaint, the court must accept as true all of the factual allegations in the complaint. *Jones v. Sherrill*, 827 F.2d 1102, 1103 (6th Cir.1987); *see also Matter of Schwartzman*, 63 B.R. 348, 354–55 (Bankr.S.D.Ohio 1986).

A. Jurisdiction

■ The motions to dismiss raise as an initial inquiry whether jurisdiction to consider the debtor's complaint exists in the bankruptcy court. As this court previously noted:

A recognition of the difference between the **existence of jurisdiction** and the **exercise of jurisdiction** in bankruptcy cases and proceedings is fundamental to an understanding and resolution of the issues presented in this proceeding and may provide guidance for future proceedings. The **existence of jurisdiction** in a bankruptcy case or proceeding rests on a broad and complete constitutionally authorized direct grant of authority by Congress to the district courts over all matters and proceedings that are connected to a bankruptcy case....

This broad grant of authority establishing the existence of jurisdiction in the district court has been recognized repeatedly in various circuit opinions.

*Commercial Heat Treating*, 80 B.R. at 884 (citations omitted; emphasis in original).

As the Sixth Circuit recently stated:

The circuit courts have uniformly adopted an expansive definition of a related proceeding under section 1334(b) and its substantially identical predecessor under the Bankruptcy Reform Act of 1978, 28 U.S.C. § 1471(b). As the Third Circuit explained in *In re Pacor, Inc.*, 743 F.2d 984 (3rd Cir.1984):

The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Id.* at 994 (emphasis in original; citations omitted). The *Pacor* formulation has been adopted by the Fourth Circuit, *see In re A.H. Robins Co.*, 788 F.2d 994, 1002 n. 11 (4th Cir.1985) (dicta), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); the Fifth Circuit, *see In re Wood*, 825 F.2d [90] at 93 [ (5th Cir.1987) ]; the Eighth Circuit, *see In re Dogpatch, U.S.A., Inc.*, 810 F.2d 782, 786 (8th Cir.1987); and the Ninth Circuit, *see In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988). We too have accepted the *Pacor* articulation, albeit with the caveat that "situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement." *In re Salem Mortgage Co.*, 783 F.2d 626, 634 (6th Cir.1986); *accord In re Turner*, 724 F.2d 338, 341 (2d Cir. 1983).

*Robinson v. Michigan Consol. Gas Co. Inc.*, 918 F.2d 579, 583–84 (6th Cir.1990) (footnote omitted).

The complaint alleges that the debtor, as a debtor-in-possession, continued postpetition to work on the project. The complaint further alleges that, in addition to the State of Ohio's violation of the automatic stay, as a result of the negligent and willful breaches of contract and tortious activities of the various defendants, individually and in concert, the debtor has sustained damages of one million, twenty-one thousand, six hundred and thirty-four dollars ($1,021,634.00) and is entitled to additional damages, including exemplary damages, attorney fees, and costs.

Whatever the future course of this proceeding, it is clear that its outcome "could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively)" and would impact on the "handling and administration of the bankruptcy estate." *Id.* at 583; *accord Arnold Print Works, Inc.*, 815 F.2d 165, 169–70 (1st Cir. 1987).

Accordingly, to the extent that any motion to dismiss asserts as a basis that jurisdiction to consider the plaintiff's complaint does not exist in this court, it is DENIED.

### B. Sovereign Immunity

■ All of the motions to dismiss state that because the defendants are the State of Ohio or agents acting on behalf of the State of Ohio, the doctrine of sovereign immunity prevents the debtor from obtaining any relief against any defendant. This derivative defense of all the other defendants rests on the success or failure of this defense by the State of Ohio.

The issue of waiver of sovereign immunity, governed by 11 U.S.C. § 106[1], has recently been addressed by the Supreme Court in *Hoffman v. Conn. Dept. Of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) and by the Sixth Circuit in *In re Nordic Village, Inc.*, 915 F.2d 1049 (6th Cir.1990). In *Nordic Village*, the Sixth Circuit noted:

First, there is no controlling analysis of the statute in *Hoffman*. Four Justices agreed that section 106 did not waive the immunity of states, in an opinion by Justice White, and in an opinion written by Justice Marshall, an equal number of Justices held to the contrary. The deciding vote in the case was delivered by Justice Scalia, concurring in the judgment on other grounds, and explicitly stating that he did not concur in the theory expanded upon in the opinion of Justice White. Thus, the most that can be said for the status of the *Hoffman* decision as precedent is that each of two theories received equal support.

*Id.*, 915 F.2d at 1051.

This proceeding involves state sovereign immunity as in *Hoffman*, not federal sovereign immunity as in *Nordic;* however, the judgment reached in *Hoffman* is limited to the proceedings in which the state has not filed a proof of claim. Justice White's decision declares, "[u]nder this construction of § 106(c), *a State that files no proof of claim* would be bound, like other creditors, by discharge of debts in bankruptcy, including unpaid taxes, see *Neavear v. Schweiker*, 674 F.2d 1201, 1204 (CA 7 1982); *cf. Gwilliam v. United States*, 519 F.2d 407, 410 (CA 9 1975), but would not be subjected to monetary recovery." *Hoffman*, 109 S.Ct. at 2823 (emphasis added).

In this case, the State of Ohio filed four (4) original proofs of claims together with one (1) supplemental proof of claim and one (1) amended proof of claim. The debtor filed a listing of these proofs of claims (Doc. 78), which reads, in part:

... Plaintiff submits copies of all proof of claims submitted by the State of Ohio and filed with the Clerk:

1. Ohio Department of Administrative Services Division of Public Works Proof of Claim filed December 6, 1988 (Exhibit "A")

2. Ohio Bureau of Employment Services Proof of Claim filed October 19, 1988 (Exhibit "B")

3. State of Ohio Department of Taxation Proof of Claim filed November 14, 1988 Supplemental Proof of Claim filed

---

1. § 106. Waiver of sovereign immunity.

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

September 22, 1989 (Exhibit "C" and "D")

4. Ohio Bureau of Worker's Compensation Estimated Proof of Claim filed September 23, 1989 Amended Proof of Claim filed November 28, 1988 (Exhibits "E" and "F")

As the court stated in *In re St. Joseph's Hospital:*

> It is perfectly clear ... that the [Supreme] Court is reiterating its earlier holding in *Clark v. Barnard,* 108 U.S. 436, 447–48, 2 S.Ct. 878, 882–83, 27 L.Ed. 780 (1883), that the filing of a proof of claim in a bankruptcy proceeding is a "voluntary appearance of the state in intervening as a claimant of the fund in court," which waives any element of immunity under the Eleventh Amendment.
>
> . . . .
>
> We also must conclude that the Court did not intend that *Hoffman* be read so broadly as to allow states to be completely exempt from the impact of the Bankruptcy Code. Exempting enforcement against a state's disregard of the consequences of a bankruptcy filing could allow the states to completely ignore the consequences of a bankruptcy filing with impunity. This result would be disastrous for debtors who have, among their creditors, states and their agencies who refuse to voluntarily acknowledge the consequences of a bankruptcy filing. *See Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) (per Justice White, the author of Opinion of the Court in *Hoffman* ) (Supremacy Clause protects debtors from state actions which frustrate applicable bankruptcy law).
>
> Considering these principles causes us to conclude that *Hoffman* cannot be read broadly. Reading it narrowly, we conclude that the Defendants here have no viable Eleventh Amendment defense because at least one agency of the Commonwealth of Pennsylvania, *i.e.,* the Department of Revenue, has filed a proof of claim in this bankruptcy case.
>
> Eleventh Amendment immunity applies to the *states,* and through them to

their agencies. A state may not selectively waive its immunity. *Hoffman* establishes that "a *State* that files no proof of claim ... would not be subjected to monetary recovery." 109 S.Ct. at 2823 (emphasis added). In *Hoffman,* the Court had before it two cases where agencies of a state had been sued by a trustee in bankruptcy court despite the fact that neither these agencies, nor, apparently, any other agencies of the same state, had filed proofs of claim in the case in which suit was brought. The Court had the opportunity to state, in its holding, that state *agencies* could not be sued for money damages if they did not file proofs of claim. Instead, the Court, in its holding, used the broader term "State." The Court thus left open the possibility that, in cases where any agency of the state has filed a proof of claim, this act constituted a waiver by the *state* of its sovereign immunity.

103 B.R. 643, 650–51 (Bankr.E.D.Pa.1989) (footnote omitted); *accord Texaco, Inc. v. Louisiana Land and Exploration Co.,* 113 B.R. 924 (M.D.La.1990) (state waived sovereign immunity in connection with debtor's complaint for alleged overpayment of severance taxes, mineral royalties, and miscellaneous royalties when it filed a proof of claim); *In re Cook United, Inc.,* 117 B.R. 301, 304–06 (Bankr.N.D.Ohio 1990) (City of Toledo waived sovereign immunity in connection with debtor's preference complaint against the City Tax Department when its Department of Public Utilities filed a proof of claim); *Matter of Windrush Associates II,* 105 B.R. 195, 198 (Bankr.D.Conn.1989) (Colorado State University waived sovereign immunity in connection with a fraudulent conveyance complaint when it filed a proof of claim); *In re PM—II Associates, Inc.,* 100 B.R. 940, 941 (Bankr.S.D.Ohio 1989) (State of Ohio waived sovereign immunity in connection with preference complaint when the Attorney General's office filed a proof of claim). *See also In re Colon,* 114 B.R. 890 (Bankr.E.D.Pa.1990) (damages for stay violations can be awarded against a state governmental entity, even if a proof of claim has not been filed by the state).

The significance of filing a proof of claim in a bankruptcy case cannot be overemphasized.

Under chapter 11 of the Bankruptcy Code, certain claimants against an estate in bankruptcy must file proofs of claim in order to participate in a reorganization and obtain any monetary satisfaction. Bankruptcy Rule 3003(c). In order to ensure finality, Bankruptcy Rule 3003(c)(3) provides that "[t]he court shall fix ... the time within which proofs of claim or interest may be filed." After passage of this time, referred to as the bar date, the claimant cannot participate in the reorganization unless he establishes sufficient grounds for the failure to file a proof of claim. *See generally In re South Atlantic Financial Corp.*, 767 F.2d 814, 817 (11th Cir.1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986).

*In re Charter Co.*, 876 F.2d 861, 863 (11th Cir.1989); *see In re Johnson*, 901 F.2d 513 (6th Cir.1990) (discussing the significance of filing proofs of claims, including estimated and amended proofs of claims, for administrative expenses in a chapter 11 case converted to a chapter 7 case); *see also Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 2799, 106 L.Ed.2d 26 (1989) (filing a proof of claim commences the process of "allowance and disallowance of claims" that is "integral to the restructuring of debtor-creditor relations" and submits the entity filing it to the equity jurisdiction of the bankruptcy court); *Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987) (a proof of claim "invokes the special rules of bankruptcy"); *In re Lion Capital Group*, 46 B.R. 850, 860 (Bankr.S.D.N.Y. 1985) (a proof of claim is "central to bankruptcy proceedings").

■ Accordingly, to the extent that the doctrine of sovereign immunity could constitute a basis for the dismissal of the debtor's complaint, the court determines that the State of Ohio waived such a defense by filing proofs of claims. Further, because no other defendant may prevail on the defense of sovereign immunity if the State of Ohio does not prevail on this defense, all motions to dismiss based on the defense of sovereign immunity are DENIED.

### C. Failure To State A Claim

#### 1. *The Ohio Building Authority*

■ The defendant, OBA, filed a motion to dismiss (Doc. 17). In its motion, OBA asserts that the debtor failed to state a claim against it; and, therefore, pursuant to 12(b)(6) of the Federal Rules of Civil Procedure as incorporated by Bankruptcy Rule 7012, it must be dismissed as a defendant. Specifically, OBA asserts that it is not a party to the contract between the debtor and the State of Ohio and that the debtor's reference to it in the complaint as being the owner of the completed project does not constitute a cause of action against it.

As previously stated, in deciding whether to grant a Rule 12(b)(6) dismissal, all of the facts alleged in the complaint are considered to be true. *Jones*, 827 F.2d at 1103. Although the debtor listed OBA as a defendant, the only reference to OBA throughout the complaint is that it will be the owner of the completed project. The mere assertion that OBA will be the owner of the project, without any further allegations, fails to constitute a cause of action against OBA. Further, the court notes that none of the debtor's filings set forth arguments against OBA's motion to dismiss. Upon review of the debtor's complaint, the court concludes that the debtor has failed to state a cause of action against OBA. Accordingly, OBA's motion to dismiss (Doc. 17) is GRANTED.

#### 2. *The Project Manager, Lorenz, KZF, and the Associate Architect*

The defendant, PM, filed a motion to dismiss (Doc. 43) asserting that, because no contractual provision relating to potential economic loss or contractual relationship exists between it and the debtor, the debtor does not possess a cause of action under Ohio law against it; and, therefore, it must be dismissed as a defendant (Doc. 82).

The defendant, Lorenz, filed a motion to dismiss (Doc. 27). Within this motion, Lor-

enz alternatively moved for a more definite statement, asserting that, if its motion to dismiss is denied, the debtor should be required to "redraft its complaint and make a more definite statement of its claims with respect to each party."

The defendant, KZF, filed a motion to dismiss (Doc. 32) and also asserts that the complaint fails to state a cause of action against it under Ohio law.

In addition, AA, has filed a motion to dismiss and/or a motion for a definite statement (Doc. 31), incorporating the arguments set forth in the motions of each of the defendants comprising AA.

The court notes that while the motions to dismiss the debtor's complaint were pending, the Supreme Court of Ohio issued a decision, *Floor Craft Floor Covering, Inc. v. Parma Com. Gen. Hospital Assoc.*, 54 Ohio St.3d 1, 560 N.E.2d 206 (Ohio 1990). *Floor Craft*, which represents the Ohio Supreme Court's initial decision governing whether a contractor possesses a cause of action in tort for economic injury in the absence of contractual privity between the parties, is controlling on the issue of whether a cause of action under Ohio law has been alleged against PM, Lorenz, and KZF. Various memoranda were filed by the parties (Docs. 81, 82, and 83) asserting *Floor Craft* as a basis for dismissal.

In *Floor Craft*, an architectural firm contracted with a hospital to prepare plans and specifications for the installation of floor covering. The hospital, in a separate contract, contracted with a flooring contractor for the installation of this floor covering. The contractor installed the floor covering in accordance with the hospital's instructions. Subsequently, bubbles formed on the flooring. With additional work and expense, the contractor corrected the problem. The flooring contractor explained that the bubbling occurred because the concrete had not cured properly and that excess water from the concrete reacted with the flooring adhesive. In a suit against the hospital and the architectural firm, the flooring contractor asserted several causes

of action, including that the architectural firm " 'negligently specified flooring and sealant which was incompatible with the construction methods utilized in the [p]roject'." *Id.* 560 N.E.2d at 207.

As provided in the syllabus[2] of *Floor Craft*, the court held that "[i]n the absence of privity of contract, no cause of action exists in tort to recover economic damages against design professionals involved in drafting plans and specifications" *id.;* however, in its decision the Ohio Supreme Court stated that a nexus between the contractor and the architect could serve as a substitute for the requisite privity when seeking recovery of economic damages under a tort theory. *Id.* at 210–12.

It is undisputed that the debtor did not contract directly with PM, Lorenz, KZF, or AA, therefore, no privity exists between the debtor and these defendants. However, the absence of contractual privity provides only a partial resolution of this defense of failure to state a claim. This court must also examine whether the debtor has alleged a sufficient nexus between it and some or all of these defendants.

Although the Ohio Supreme Court clarified the issues involving privity for these causes of action, it did not decide what would constitute a sufficient nexus to substitute for contractual privity in a construction work setting. It merely stated that "there is generally no nexus found between subcontractors ... and architects that can serve as a substitute for contractual privity." *Id.* at 211 (citing *Widett v. U.S. Fid. & Guar. Co.*, 815 F.2d 885, 886–87 (2d Cir.1987)). In examining *Floor Craft* for guidance as to what would constitute a sufficient nexus, this court notes two cases which were cited by the supreme court in *Floor Craft*. The supreme court cited the Tenth Circuit's decision in *Ramey Const. v. Apache Tribe of Mescalero Reserv.*, 673 F.2d 315, 321 (10th Cir.1982). In *Ramey*, a negligence action was brought by a contractor against an architect. The architect was not held liable for damages caused by

**2.** Under Ohio law, the syllabus of the Ohio Supreme Court establishes the law set forth by the

case. *Matter of Petrey*, 116 B.R. 95, 99 n. 2 (Bankr.S.D.Ohio 1990).

the failure to manage and coordinate the project where its duties under the contract were limited primarily to " 'surveillance of project construction to assure compliance with plans, specifications and other documents,' " and where there was no contractual provision requiring the architect to be responsible for project management. *Floor Craft* at 211. In contrast, this court notes the Ohio Supreme Court's citation to a decision from the Supreme Court of Florida, *A.R. Moyer, Inc. v. Graham,* 285 So.2d 397 (Fla.1973). In *Moyer,* the Supreme Court of Florida stated that, notwithstanding the absence of privity between the architect and the general contractor, "too much control over the contractor necessarily rests in the hands of the supervising architect for him not to be placed under a duty imposed by law to perform without negligence his functions as they affect the contractor. The power of the architect to stop the work alone is tantamount to a power of economic life or death over the contractor. It is only just that such authority, exercised in such a relationship, carry commensurate legal responsibility." *Id.* at 401 (quoting *United States v. Rogers & Rogers,* 161 F.Supp. 132 (S.D.Cal.1958)).

PM was the debtor's sole contact with the State of Ohio, communicating with the debtor with regard to the project, administering the provisions of the contract, presenting the debtor's concerns regarding the project to the State of Ohio, and possessing the authority to "stop the work" and exercise a "power of economic life or death over the contractor." *Id.* Therefore, this court concludes that the debtor has alleged a sufficient nexus between it and PM to constitute a cause of action against PM. Accordingly, PM's motion to dismiss for failure to state a claim is DENIED.

█ As to the defendants, Lorenz, KZF, and AA, the court finds that although some of the plaintiff's causes of action hint at the factual circumstances that could meet the requirements suggested in *Floor Craft,* the factual allegations in the plaintiff's present complaint fail to adequately detail the involvement and control consistent with this court's determination of the

requirements necessary to establish the required nexus to substitute for contractual privity under Ohio law.

Notwithstanding the debtor's failure to set forth sufficient factual detail to allege a cause of action against KZF, Lorenz, and AA, consideration of several other factors are required. The court notes that the debtor's complaint was filed prior to the publication of *Floor Craft.* Additionally, some of the allegations in the debtor's complaint suggest that a cause of action against these defendants could exist. As a result, the court has considered not only the policies underlying determinations of motions to dismiss (Bankr.R. 7012(b)), *see Jones,* 827 F.2d at 1103; but also the policies underlying motions allowing amendment of pleadings (Bankr.R. 7015), and motions for a more definite statement (Bankr.R. 7012(e)). *See Schwartzman,* 63 B.R. at 358.

Accordingly, the court grants the motions for more definite statement, and also grants the debtor fourteen (14) days to file an amended complaint as to the defendants Lorenz, KZF, and AA, if the debtor has a sufficient basis for such allegations. Any amended complaint must set forth specific factual allegations which could demonstrate the nexus required to establish a cause of action under Ohio law against the defendants, Lorenz, KZF, and AA.

## VI. CONCLUSIONS

To the extent that any party's motion to dismiss asserts as a basis lack of jurisdiction or sovereign immunity, all such motions are DENIED.

The Ohio Building Authority's motion to dismiss (Doc. 17) for failure to state a claim upon which relief can be granted is GRANTED.

The motions to dismiss filed by The State of Ohio, the Department of Administrative Services, Division of Public Works and The State Architect, Division of Public Works (Doc. 14) and Ruscilli Construction Company, The Sherman R. Smoot Company, A Joint Venture (Doc. 43), to the extent that they assert failure to state a claim upon which relief can be granted, are DENIED.

The motions to dismiss and the motions for a more definite statement (Docs. 27, 31, 32, 43) filed by Lorenz & Williams, Inc. and Lorenz & Williams, Inc., KZF, Inc., A Joint Venture are GRANTED; and, unless the plaintiff, not later than fourteen (14) days from the date of the order on this decision, files an amended complaint, alleging, with specificity, facts which would demonstrate the nexus required by Ohio law, the complaint will be dismissed as to the defendants Lorenz & Williams, Inc., KZF, Inc., and Lorenz & Williams, Inc., KZF, Inc., A Joint Venture.

Orders in accordance with this decision are simultaneously entered.

SO ORDERED.