### In re HUGHES–BECHTOL, INC., Debtor.

### HUGHES–BECHTOL, INC., Plaintiff,

### v.

### CONSTRUCTION MANAGEMENT, INC., The Charlotte–Mecklenberg Board of Education, and Brackett Associates, P.A., Defendants.

Bankruptcy No. 3–88–02492.
Adv. No. 3–89–0284.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Sept. 27, 1991.

Thomas R. Noland, Dayton, Ohio, for Hughes–Bechtol, Inc.

John T. Ducker, Dayton, Ohio, for the Charlotte–Mecklenberg Bd. of Educ. and Const. Management, Inc.

## DECISION ON ORDER DENYING MOTIONS

THOMAS F. WALDRON, Bankruptcy Judge.

The Motion Of Defendant, Construction Management, Inc., For A Determination That This Adversary Proceeding Is Not A Core Proceeding (Doc. 12) and the Motion Of Defendant, Charlotte–Mecklenberg Schools, For A Determination That This Adversary Proceeding Is Not A Core Proceeding (Doc. 13) are presently pending before this court for determination. This adversary proceeding involves allegations of breach of contract, tortious interference with business relations, and violation of the automatic stay caused by the defendants' attempted setoff of debt owing to the plaintiff which arose before the commencement of the case against claims asserted by the defendants. A Supplement To Memorandum In Support Of Motion Of Defendant, The Charlotte–Mecklenberg Board Of Education (Doc. 24), a Response to Supplemental Memorandum Of Defendant The Charlotte–Mecklenberg Board Of Education (Doc. 27), a Supplemental Memorandum Of Plaintiff Regarding Determination Of Core Proceeding (Doc. 51), and Additional Memoranda In Support Of Motion Of Defendants, The Charlotte–Mecklenberg Board Of Education And Construction Management Inc.'s Motion For An Order Determining That This Adversary Proceeding Is Not A Core Proceeding (Doc. 63) have additionally been filed.

## I. BACKGROUND

In its Third Amended Complaint (Doc. 57) Hughes–Bechtol, Inc. (Hughes), a debtor-in-possession, alleges that on September 9, 1987, it entered into a contract (Contract) with J.J. Kirlin, Inc. (Kirlin). Pursuant to this Contract, Hughes was to perform fabrication and installation of sheet metal as a subcontractor to Kirlin, for a project known as the Southeastern High School located in Matthews, North Carolina. On August 3, 1988, Hughes filed for protection under chapter 11 of the Bankruptcy Code. Subsequently, Hughes filed this adversary proceeding. Under a Liquidation and Settlement Agreement (Doc. 55, attachment) entered into by Hughes and Kirlin, Hughes acquired the right to prosecute, in its own name or in the name of Kirlin, any claim of either Hughes or Kirlin which arose against the defendants named in this proceeding, including Construction Management, Inc. (CMI), the Charlotte–Mecklenberg Board Of Education (CBOE), and Brackett Associates, P.A. (Brackett) (collectively the Defendants).

Hughes, in its first cause of action, asserts that CMI damaged Hughes by failing to administer and validate the "coordination of work in the manner upon which it was represented prior to the letting of work for such project" and by failing "to schedule the job properly or to coordinate its work or the work of other contractors, their subcontractors, and suppliers." Further, Hughes alleges that CMI "hindered, interfered with, stretched out, and slowed down performance of the construction on the project beyond the contract completion date by requiring extra work outside the scope of the contract, by making changes

in the work or in the scope of the work, by redesigning the requirements of the plans and specifications, by failing to respond timely or adequately to requests for information, by untimely processing submittals, shop drawings and change orders, by improper scheduling of the work, and by improper coordination of the work." Additionally, Hughes alleges that CBOE and Brackett provided defective plans and specifications. Hughes further alleges that "CMI, by its actions or directions or omissions to Kirlin, to which Hughes was subcontracted, and CBOE and/or Brackett, by their actions or inactions, caused Hughes to perform extra work and failed to pay Hughes for such extra work." Lastly, Hughes alleges that "[a]s a direct and proximate result of prepetition but mostly postpetition actions of the Defendants, CMI, CBOE, and Brackett, Hughes was damaged including, but not limited to, contract balances due and owing, additional costs incurred as a result of increases in direct labor, material, equipment, and stockpile requirements, increased supervision, increased field labor, extended home office and field overhead, interest on sums advanced in the form of expenditures for the work, and lost profits."

Under its second cause of action, Hughes alleges that "CMI and CBOE held retainage from contract amounts due for work performed by Hughes to insure performance or substantial completion. Despite having completed such work postpetition and being entitled to retainage payment postpetition, CMI and CBOE continue to refuse to pay over to Hughes such retainage without any sustainable legal defense."

Under its third cause of action, Hughes alleges that the Defendants, for their benefit, caused Hughes prepetition, but mostly postpetition, to perform extra work not required by the Contract and that it has not been paid for performing this work. Hughes alleges that it is entitled to the reasonable value of the materials provided and for the services rendered for the direct and indirect benefit of the project and/or the Defendants under the theories of unjust enrichment or *quantum meruit.*

Under its fourth cause of action, Hughes alleges that the Defendants, for their benefit, caused Hughes, prepetition but mostly postpetition, to perform extra work not required under the Contract and that Hughes has not been paid for this extra work. Hughes alleges that it is entitled to the reasonable value of the materials provided and the services rendered for the direct or indirect benefit of the Defendants.

Under its fifth cause of action, Hughes alleges that the Defendants, by their actions as set forth in the preceding paragraphs, have taken action to obtain possession of property of the estate and exercised control over property of the debtor and property of the estate in violation of 11 U.S.C. § 362(a)(3). Further, Hughes alleges that the defendants, by their actions previously set forth, are in violation of § 362(a)(7) in that they are attempting to setoff debt owing to Hughes which arose before the commencement of the case against claims these defendants assert against Hughes.

Hughes seeks a judgment against the Defendants, jointly and severally, in an amount in excess of $200,000 plus interest, costs, and any further relief as the court may find appropriate.

CMI and CBOE contend that this is not a core proceeding (Docs. 12 and 13). In support of this contention, they argue that this proceeding does not come within any of the subsections enumerated in 28 U.S.C. § 157(b)(2)(B) through (N) and that, absent Hughes' filing under chapter 11 of the Bankruptcy Code, no federal jurisdiction would exist. Further, CMI and CBOE assert that Hughes did not set forth any facts to support its allegations that setoff has occurred. In its supplemental memorandum (Doc. 24), CBOE further asserts that recovery against it is barred by the Eleventh Amendment. Additionally, CMI and CBOE assert that the Contract mandates that any dispute be arbitrated and that no privity of contract exists between Hughes and the Defendants (Doc. 63).[1]

---

**1.** Although CMI and CBOE raise the substantive defenses of sovereign immunity and lack of

None of the Defendants have filed a proof of claim.

## II.  DISCUSSION

This court must determine whether it possesses jurisdiction before it determines whether this proceeding is core or non-core. If jurisdiction exists, the court must then determine the manner in which this jurisdiction should be exercised. *Commercial Heat Treating of Dayton, Inc. v. Atlas Indus., Inc. (Matter of Commercial Heat Treating of Dayton, Inc.)*, 80 B.R. 880, 884 (Bankr.S.D.Ohio 1987).

### A.  28 U.S.C. § 1334—Jurisdiction

28 U.S.C. § 1334 sets forth the provisions governing the existence of jurisdiction in bankruptcy courts providing, in pertinent part, as follows:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

Section 1334 establishes four categories of proceedings which are within the jurisdiction of the district court: (1) cases under title 11, (2) civil proceedings arising under title 11, (3) civil proceedings arising in a case under title 11, and (4) civil proceedings related to a case under title 11.  The first category, *cases under title 11*, describes the underlying bankruptcy case upon which all subsequent proceedings rest. *Michigan Employment Security Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1141 (6th Cir.1991). With regard to the second category, *civil proceedings arising under title 11*, legislative history indicates that:

The phrase "arising under" has a well defined and broad meaning in the jurisdictional context.  By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11....

*United Sec. & Communications, Inc. v. Rite Aid Corp. (In re United Sec. & Communications, Inc.)*, 93 B.R. 945, 950 (Bankr.S.D.Ohio 1988) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess., 445–46, *reprinted in* 1978 U.S.Code & Admin.News 5787, 6400–01).  The third category of cases, *proceedings arising in a case under title 11*, although lacking in specificity, "seems to be a reference to those 'administrative' matters that arise *only* in bankruptcy cases.  In other words, 'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Wood v. Wood (Matter of Wood)*, 825 F.2d 90, 97 (5th Cir.1987) (footnote omitted).  The final category, *proceedings related to a case under title 11*, has been expansively defined. As the Sixth Circuit recently stated:

[T]he circuit courts have uniformly adopted an expansive definition of a related proceeding under section 1334(b) and its substantially identical predecessor under the Bankruptcy Reform Act of 1978, 28 U.S.C. § 1471(b).  As the Third Circuit held:

The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*.  Thus, the proceeding need not necessarily be against the debtor or against the debtor's property.  An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon

---

privity of contract, consideration of the issues presented by such substantive defenses is not necessary to a resolution of the core/non-core issue.  The court does not address these substantive defenses in this decision.

the handling and administration of the bankrupt estate.

*In re Pacor, Inc.,* 743 F.2d 984, 994 (3d Cir.1984) (emphasis in original; citations omitted). We "have accepted the *Pacor* articulation, albeit with the caveat that 'situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement.'" *Robinson* [*v. Michigan Consolidated Gas Co.*], 918 F.2d [579] at 584 [6th Cir.1990] (quoting *In re Salem Mortgage Co.,* 783 F.2d 626, 634 (6th Cir.1986)); *accord In re Turner,* 724 F.2d 338, 341 (2d Cir.1983).

*In re Wolverine Radio Co.,* 930 F.2d at 1141–42. *See also Hughes-Bechtol, Inc. v. Ohio (In re Hughes-Bechtol, Inc.),* 124 B.R. 1007, 1015 (Bankr.S.D.Ohio 1991). However, for purposes of determining this court's jurisdiction under 28 U.S.C. § 1334(b), it is not necessary to distinguish between these categories because "[t]hese references operate conjunctively to define the scope of jurisdiction." *In re Wolverine,* 930 F.2d at 1141.

■ Applying the foregoing authority, this court concludes that it possesses jurisdiction over this proceeding. This court concludes that, at the very least, this proceeding is "related to" a case under title 11. The potential recovery of construction funds and award of damages "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or nega-

tively)" and may impact "upon the handling and administration of the bankrupt estate." *Wolverine,* 930 F.2d at 1142 (quoting *In re Pacor, Inc.,* 743 F.2d at 994); *see also In re Hughes-Bechtol, Inc.,* 124 B.R. at 1015–16.

The determination of the existence of jurisdiction is only the initial step. As this court previously stated in *Matter of Commercial Heat Treating of Dayton, Inc.,* 80 B.R. at 884, "[a] recognition of the difference between the existence of jurisdiction and the exercise of jurisdiction is fundamental to an understanding and resolution of the issues presented...."

### B. 28 U.S.C. § 157—Core/Non-Core

The exercise of authority by bankruptcy courts is governed by 28 U.S.C. § 157. Section 157 sets forth the provisions which govern the manner in which a bankruptcy court expresses its determination of a proceeding—either by a final judgment (§ 157(b)(1)) or by proposed findings of fact and conclusions of law (§ 157(c)(1)). Pursuant to § 157(b)(1), the bankruptcy court is granted the authority "to determine all cases under title 11.[2]" Additionally, the bankruptcy court has the authority to determine all "core proceedings under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). The term "core proceeding" is not defined, but § 157(b)(2) contains a non-exclusive listing of examples of core proceedings.[3] Under § 157(b)(3)[4], a

**2.** § 157. Procedures.
....
   (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

**3.** § 157. Procedures.
....
   (b)(2) Core proceedings include, but are not limited to-
      (A) matters concerning the administration the estate;
      (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or

wrongful death claims against the estate for purposes of distribution in a case under title 11;
      (C) counterclaims by the estate against persons filing claims against the estate;
      (D) orders in respect to obtaining credit;
      (E) orders to turn over property of the estate;
      (F) proceedings to determine, avoid, or recover preferences;
      (G) motions to terminate, annul, or modify the automatic stay;
      (H) proceedings to determine, avoid, or recover fraudulent conveyances;
      (I) determinations as to the dischargeability of particular debts;
      (J) objections to discharges;
      (K) determinations of the validity, extent, or priority of liens;
      (L) confirmations of plans;

judge shall determine whether a proceeding is core or whether it is otherwise related to a case under title 11. Pursuant to 28 U.S.C. § 157(c)(1),

A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected.

The category of non-core proceedings is extremely limited; thus, an examination of the characteristics existing in non-core proceedings will be of assistance. *Matter of Walton*, 104 B.R. 861, 864 (Bankr.S.D.Ohio 1988). A non-core proceeding is identified by the following characteristics- a proceeding filed in the bankruptcy court alleging a cause of action which:

1) is not *specifically* identified as a core proceeding under § 157(b)(2)(B) through (N),

2) existed prior to the filing of the bankruptcy case,

3) would continue to exist independent of the provisions of title 11, and

4) the parties' rights, obligations, or both are not significantly affected as a result of the filing of the bankruptcy case.

*Hughes–Bechtol, Inc. v. Air Enterprises, Inc. (Matter of Hughes–Bechtol, Inc.)*, 107 B.R. 552, 556 (Bankr.S.D.Ohio 1989); *Matter of Walton*, 104 B.R. at 864; *Matter of Commercial Heat Treating of Dayton,*

(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

*Inc.*, 80 B.R. at 888; *see also Marshall v. Michigan Dept. of Agriculture (In re Marshall)*, 118 B.R. 954, 963 (W.D.Mich.1990); *Grabowski v. Levin (In re Second Pine, Inc.)*, 107 B.R. 48, 49 (E.D.Pa.1989). Congress intended to interpret "core proceedings" broadly; thus, proceedings which do not contain all the characteristics of a non-core proceeding will be determined to be core. *Matter of Commercial Heat Treating of Dayton, Inc.*, 80 B.R. at 880.

In determining whether this proceeding is core or non-core, both the form and the substance of the proceeding must be examined. *In re Wolverine Radio, Co., Inc.*, 930 F.2d at 1144 (citing *Matter of Wood*, 825 F.2d at 97). Hughes alleges that the Defendants breached the contract prepetition, but mostly postpetition, tortiously interfered with business relations, and violated the automatic stay by obtaining and exercising control over property of the estate, and by attempting to setoff debt owing to Hughes which arose prior to commencement of this bankruptcy case against claims the Defendants assert against Hughes. Hughes alleges that this is a core proceeding under sections 157(b)(2)(A), (B), (C), (E), (K), and (O).

At the outset, the court notes that Hughes' contention that this proceeding is core under sections 157(b)(2)(B), (C), and (K) does not withstand analysis. None of the Defendants in this proceeding have filed a proof of claim, nor was this proceeding brought to determine the "validity, extent, or priority of liens." In order to reach a determination of whether this proceeding is a core or non-core proceeding it must be recognized that a portion of Hughes' claims arose prepetition (Prepeti-

4. § 157. Procedures.
. . . .
(b)(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

tion Portion) and that a portion arose post-petition (Postpetition Portion).

■ The Prepetition Portion of Hughes' claim is not specifically identified as a core proceeding under § 157(b)(2)(B) through (N). If Hughes prevailed in this proceeding, the estate would have a greater amount of assets to distribute to its creditors. In this respect, this proceeding could be characterized as one which "affects the administration of the estate" under § 157(b)(2)(A) or one "affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship" under § 157(b)(2)(O); however, there are limits to the wide-sweeping language of subsections (A) and (O). The catch-all provisions of sections 157(b)(2)(A) and (O) must be considered in conjunction with the constitutional principles set forth in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In *Marathon*, a plurality of the court held that the broad jurisdiction granted to bankruptcy courts was unconstitutional because it allowed bankruptcy courts to hear controversies which are required by the Constitution to be heard by Article III courts. Specifically, the Court stated:

> [T]he case before us, which centers upon appellant Northern's claim for damages for breach of contract and misrepresentation, involves a right created by *state* law, a right independent of and antecedent to the reorganization petition that conferred jurisdiction upon the Bankruptcy Court. Accordingly, Congress' authority to control the manner in which that right is adjudicated, through assignment of historically judicial functions to a non-Art. III "adjunct," plainly must be deemed at a *minimum.*

*Marathon*, 458 U.S. at 84, 102 S.Ct. at 2878 (emphasis added; footnote omitted). Thus, this court concludes that "state law contract claims that do not specifically fall within the categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)–(N) are related proceedings under § 157(c) even if they arguably fit within the literal wording of the two catch-all provisions, sections

157(b)(2)(A) and (O)." *Piombo Corp. v. Castlerock Properties (In re Castlerock Properties)*, 781 F.2d 159, 162 (9th Cir. 1986); *see also Taxel v. Electronic Sports Research (In re Cinematronics, Inc.)*, 916 F.2d 1444, 1450 (9th Cir.1990); *Marine Iron & Shipbuilding Co. v. City of Duluth (In re Marine Iron & Shipbuilding Co.)*, 104 B.R. 976, 982 (D.Minn.1989); *O'Neil v. Sherman (Matter of TVR of America, Inc.)*, 123 B.R. 159, 162 (Bankr.D.Conn. 1991).

■ In addition, the Prepetition Portion cannot be classified as a turnover proceeding under § 157(b)(2)(E). As this court previously held in *Matter of Commercial Heat Treating of Dayton, Inc.*, 80 B.R. at 890, "a proceeding to collect a prepetition account receivable that is subject to a BONAFIDE dispute is a non-core proceeding." A BONAFIDE dispute exists between Hughes and the Defendants with regard to funds due under the Contract. It is undisputed that the resolution of this dispute is dependent solely upon state law. *See Staats v. Adolfson & Peterson, Inc. (In re Statewide Pools, Inc.)*, 126 B.R. 877, 881–82 (Bankr.S.D.Ohio 1991); *Shelly's, Inc. v. Food Concepts of Wisconsin, Inc. (In re Shelly's, Inc.)*, 97 B.R. 370, 371 (Bankr.S.D.Ohio 1989); *In re United Sec. & Communications, Inc.*, 93 B.R. at 958–59; *Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.)*, 81 B.R. 422, 429–30 (Bankr.S.D.Tex.1987); *Acolyte Elec. Corp. v. City of New York*, 69 B.R. 155, 172 (Bankr.E.D.N.Y.1986); *R.I. Lithograph Corp. v. Aetna Casualty and Surety Co. (In re R.I. Lithograph Corp.)*, 60 B.R. 199, 204 (Bankr.D.R.I.1986).

Additionally, the court finds that as to the Prepetition Portion all remaining characteristics of a non-core proceeding are present. The Prepetition Portion existed prior to the filing of Hughes' bankruptcy petition, these causes of action asserted by Hughes would continue to exist independent of the provisions of title 11 because they are completely based upon state law, and lastly, Hughes' bankruptcy filing has not significantly affected the parties' rights or obligations in any of their causes of

action asserted in connection with the Prepetition Portion. Thus, if this proceeding contained *only* the Prepetition Portion, the court would conclude it is non-core. However, this proceeding additionally contains the Postpetition Portion.

Although the Contract was entered into prepetition, the majority of Hughes' causes of action arose postpetition.[5] This court does not suggest that the complicated determination of whether a proceeding is core or non-core, which necessarily implicates the constitutional concerns expressed in *Marathon*, can be resolved by merely determining that a greater percentage of transactions occurred postpetition rather than prepetition; however, such a determination constitutes a factor in reaching a core or non-core determination.

A significant number of courts, including courts of appeals, have placed emphasis on when the parties entered a contract, "pre" or "post" petition, and have concluded that causes of action which arose postpetition are core because they arose "in a case." *See e.g. Ben Cooper, Inc. v. Ins. Co. of the State of Pennsylvania (In re Ben Cooper, Inc.)*, 896 F.2d 1394 (2d Cir.1990), *cert. granted*, —— U.S. ——, 110 S.Ct. 3269, 111 L.Ed.2d 779 (1990), *vacated and remanded*, —— U.S. ——, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990) (debtor-in-possession's action to enforce contract entered into postpetition is a core proceeding); *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.)*, 815 F.2d 165 (1st Cir. 1987) (debtor-in-possession's action to collect postpetition account receivables is core under § 157(b)(2)(A) and (O)); *Umbreit v. Stump, Harvey & Cook, Inc. (In re Baltimore Motor Coach Co.)*, 103 B.R. 103, 105 (D.Md.1989) (action filed by chapter 7 trustee against insurers for postpetition misconduct committed against debtor-in-possession is core); *Associated Grocers of Colorado, Inc. v. Tempora Corp. (In re Associated Grocers of Colorado, Inc.)*, 97 B.R.

39, 41 (Bankr.D.Colo.1988) (action to collect postpetition account receivables is core); *J.B. Van Sciver Co. v. William Cooper Assoc. Inc. (In re J.B. Van Sciver Co.)*, 73 B.R. 838, 843–44 (Bankr.E.D.Pa.1987) (action brought by debtor-in-possession for breach of postpetition contract entered into with court approval is core); *Sywilok v. Estee Lauder, Inc. (In re Epi–Scan, Inc.)*, 71 B.R. 975, 978–79 (Bankr.D.N.J.1987) (action to recover prepetition account receivables is non-core; however, action to recover postpetition account receivables is core); *Burns v. Massachusetts Property Ins. Underwriting Ass'n (In re Mike Burns Inn, Inc.)*, 70 B.R. 863, 867–68 (Bankr.D.Mass. 1987) (causes of action alleging breach of contract and deceit which arose postpetition are core); *L.A. Clarke And Son, Inc. v. Bullock Constr., Inc. (In re L.A. Clarke And Son, Inc.)*, 51 B.R. 31, 33 (Bankr. D.D.C.1985) (action filed by debtor-in-possession to recover postpetition account receivables is core).

However, in comparison, courts which have addressed the issue of whether a proceeding containing both prepetition and postpetition causes of action is core or non-core have reached contrary conclusions. *See Germain v. Connecticut Nat'l Bank (Matter of O'Sullivan's Fuel Oil Co., Inc.)*, 88 B.R. 17, 21–22 (D.Conn.1988) (proceeding which contained causes of action alleging prepetition and postpetition tortious conduct was core); *Pester Refining Co. v. MAPCO Gas Products (Matter of Pester Refining Co.)*, 66 B.R. 801, 817–18 (Bankr.S.D.Iowa 1986) (action brought by debtor-in-possession against prepetition creditor who converted property postpetition is core), *aff'd on other grounds*, 85 B.R. 520 (S.D.Iowa 1987), *aff'd in part on other grounds and rev'd in part on other grounds*, 845 F.2d 1476 (8th Cir.1988); *but see Beard v. Braunstein*, 914 F.2d 434 (3d Cir.1990) (the court noted, "this action involving pre-petition contracts, allegedly

---

5. Hughes, in an affidavit (Doc. 15, attachment), states that four percent of the work was performed on the contract prepetition and ninety-six percent of the work was performed on the contract postpetition. Despite having the opportunity to respond, none of the Defendants have

disputed these percentages. Thus, this court will accept Hughes' assertions as fact. *See generally Talbot v. Warner (Matter of Warner)*, 65 B.R. 512, 516 (Bankr.S.D.Ohio 1986); *Ledford v. Tiedge (Matter of Sams)*, 106 B.R. 485, 491–92 (Bankr.S.D.Ohio 1989).

breached both before and after the filing of the petition, is entirely a non-core matter related to a case arising under title 11. We are not presented with and *thus do not decide whether a claim for the breach of a post-petition contract, or a claim only for the post-petition breach of a contract entered into pre-petition, are core matters.*" (emphasis added)); *J.T. Moran Fin. Corp. v. Am. Consol. Fin. Corp.*, 124 B.R. 931 (S.D.N.Y.1991); *Aristera Co. v. A.H. Chaney (In re Aristera)*, 65 B.R. 928 (Bankr. N.D.Tex.1986).

This court believes that resolution of the issue of whether a proceeding which contains both prepetition and postpetition causes of action is core or non-core is aided not only by an examination of the *time period* when the contract was entered, "pre" or "post" petition, but also by an analysis of the *nature and the extent of the contract* at issue. This court finds it significant to note that decisions which have concluded that proceedings which allege causes of action for both prepetition and postpetition breaches of contracts are non-core proceedings have involved contracts where the obligations of the parties were essentially completed prepetition and the postpetition transactions of the parties were limited, in some cases merely to the debtor's demand for payments pursuant to the contract. *See Beard*, 914 F.2d at 445 (court found breach of lease contracts, which were signed prepetition, "merely for rent" and thus only "tangentially related to the bankruptcy"); *Moran*, 124 B.R. at 937 (the court noted that there "were no postpetition transactions between the parties" and the cause of action was based on an entity's alleged failure to pay interest to the debtor pursuant to the terms of notes which were signed prepetition); *Aristera*, 65 B.R. at 929 (in cause of action involving sale of materials the court noted that no invoices were attached to the complaint and it was not "clear from the complaint whether this account arose before or after the filing of the Debtor's Petition under Chapter 11").

In contrast, the decisions which have concluded that proceedings which allege causes of action for both prepetition and postpetition breaches of contracts are core proceedings, have involved significant and repeated postpetition transactions between a debtor, particularly a debtor-in-possession, and other parties pursuant to contracts which continued existing rights and obligations or established new rights and obligations among the parties. *Ben Cooper*, 896 F.2d at 1399 ("[p]ostpetition contracts with the debtor-in-possession ... are integral to the estate administration from the date they are entered into."); *Arnold*, 815 F.2d at 170 ("[p]arties who contract with a bankrupt company's trustee or with a debtor-in-possession know that they are dealing with an agent responsible to a bankruptcy court; that the bankruptcy court would resolve subsequent disputes should therefore come as no surprise."); *O'Sullivan's Fuel*, 88 B.R. at 20–21 ("[w]hen the postpetition acts complained of heavily dominate in terms of frequency, significance and effect compared to the prepetition acts, a proceeding brought to attach liability based upon the totality of such acts will be considered a core matter."). *See also Sibarium v. NCNB Texas Nat'l Bank*, 107 B.R. 108, 115 (N.D.Tex. 1989) (see cases collected therein).

■ Applying the foregoing analysis to this proceeding, the court concludes that the Postpetition Portion is core because the Contract in this proceeding was not essentially concluded prepetition; rather, the Contract continued existing rights and obligations and established new rights and obligations among the parties in connection with the postpetition completion of a construction project. The Contract involved significant and repeated postpetition transactions among Hughes and the Defendants, which Hughes claims include, not only the alleged violations of the automatic stay, but also a variety of activities for "extra work not required by the contract," "changes in the work or scope of the work," "redesigned plans and specifications," "failure to respond timely or adequately to requests for information, by untimely processing submittals, shop drawings, and change orders," and "improper scheduling and coordination of the work."

It is undisputed in this proceeding that a majority of the work was performed post-petition, ninety-six percent (96%), while only four percent (4%) was performed pre-petition. Additionally, it is clear that at the time this bankruptcy was filed, virtually none of the rights or obligations under the Contract at issue existed or had ripened, nor was the debtor-in-possession entitled to the proceeds of the Contract prior to the debtor-in-possession's postpetition performance of the Contract. *See Valley Forge Plaza Assocs. v. Fireman's Fund Ins. Cos.,* 107 B.R. 514, 517 (E.D.Pa.1989); *Eastern Elec. Sales Co., Inc. v. General Elec. Co.,* 94 B.R. 348, 349 (E.D.Pa.1989); *Treadway v. United Bank & Trust Co. (In re Treadway),* 117 B.R. 76, 82 (Bankr.D.Vt. 1990) (citing 1 *Collier on Bankruptcy,* para. 3.01[iv], pp. 3–50 (15th ed. 1989)).

Furthermore, the court notes that, although the Prepetition Portion is non-core, the Postpetition Portion "heavily predominates and the non-core aspect is insignificant." *Sibarium,* 107 B.R. at 115; *see also Ben Cooper,* 896 F.2d at 1399; *Arnold,* 815 F.2d at 170; *Taxel v. Electronic Sports Research (In re Cinematronics, Inc.),* 111 B.R. 892, 901 (Bankr.S.D.Cal. 1990); *Gagel v. Kingston–Greene Partners, Ltd. (In re GWF Investment, Ltd.),* 85 B.R. 771, 778 (Bankr.S.D.Ohio 1988); *Blackman v. Seton (In re Blackman),* 55 B.R. 437, 443 (Bankr.D.C.1985). *See also Matter of O'Sullivan's Fuel Oil Co., Inc.,* 88 B.R. at 20–21.

Although the court recognizes that this proceeding possesses the third characteristic of a non-core proceeding, in that some of the causes of action asserted by the debtor would exist independent of the provisions of title 11, it is otherwise a core proceeding because an entity, the debtor-in-possession, which came into existence only during the administration of a bankruptcy estate (§ 157(b)(2)(A)), continued and concluded a construction contract using estate assets, including assets subject to a court approved cash collateral order, while receiving the protection of the automatic stay, in an attempt to liquidate assets of the estate (§ 157(b)(2)(O)) and is, thus, entitled to obtain a determination of the rights and obligations of the parties and of the estate (§ 157(b)(2)(E)) as a core proceeding.

■ Hughes' complaint additionally alleges that the Defendants violated the automatic stay. Proceedings brought pursuant to 11 U.S.C. § 362 are core proceedings. The term "core proceeding" includes any right which was created under title 11. As the legislative history indicates:

> The automatic stay is *one of the fundamental debtor protections provided by the bankruptcy laws.* It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 340, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6296–6297 (emphasis added). The automatic stay is an "integral part of the federal rights created under the Bankruptcy Code, and state created rights have nothing to do with the application of the automatic stay, [thus] there can be no constitutional objection under *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)." *Budget Service Co. v. Better Homes of Virginia Inc.,* 804 F.2d 289, 292 (4th Cir.1986). Although the automatic stay is not specifically designated as a core proceeding under 28 U.S.C. § 157(b)(2)(B) through (N), § 157(b)(2)(G), "motions to terminate, annul, or modify the automatic stay," indicates that issues related to the automatic stay are core. *Budget*

*Service*, 804 F.2d at 292; *Mallard Pond Partners v. Commercial Bank & Trust Co.*, 113 B.R. 420, 421 (Bankr.W.D.Tenn. 1990).

Accordingly, this court finds that the motions filed by Construction Management, Inc. and the Charlotte–Mecklenberg Board of Education seeking a determination that this proceeding is non-core are DENIED and this proceeding is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and (O).

An order in accordance with this decision is simultaneously entered.

SO ORDERED.