HUGHES–BECHTOL, INC.,
Appellee–Plaintiff,

v.

CONSTRUCTION MANAGEMENT, INC.,
et al., Appellants–Defendants.

Bankruptcy No. C3–91–476.

United States District Court,
S.D. Ohio, W.D.

May 7, 1992.

John Talbot Ducker, Talbot & Ducker, Dayton, Ohio, for appellants.

Thomas Richard Noland, Altick & Corwin, Dayton, Ohio, for appellee.

### MEMORANDUM AND ORDER

BECKWITH, District Judge.

■ This matter is before the Court on the Appellants' appeal of the Decision on Order (the "Decision") of the Bankruptcy Court for the Southern District of Ohio in which that court denied Appellants' motions for a determination that the adversary proceeding, filed by the chapter 11 debtor, Hughes–Bechtol, Inc., against Appellants is a non-core proceeding. In the Decision, issued on September 27, 1991, the Bankruptcy Court denied Appellants' motion and concluded that the adversary proceeding was a core proceeding, 132 B.R. 339. The sole issue presented by the appeal is whether the Bankruptcy Court's determination as to core status was correct. That issue is a question of law, which the Court will consider *de novo*. *In re Contractors Equipment Supply Co.*, 861 F.2d 241, 243 (9th Cir.1988).

### I. *Background*

The parties do not dispute the statement of facts and summary of causes of action as set forth by the Bankruptcy Court in the Decision at pages 340 through 341. The Court will not restate the facts or causes of action, except to note that the basis for Appellee's adversary complaint is a construction contract into which the parties entered on September 9, 1987. The causes of action asserted by Appellee relate to the conduct of the parties pursuant to or in connection with that contract. Appellee filed a voluntary chapter 11 petition on August 3, 1988. At the petition date, approximately four percent of the contract work had been performed. Approximately 96 percent of the contract work was performed postpetition. *Decision* at page 346.

### II. *Analysis*

■ As stated by the Bankruptcy Court, that court's exercise of authority is gov-

erned by 28 U.S.C. § 157, which sets forth the provisions governing "the manner in which a bankruptcy court expresses its determination of a proceeding—either by a final judgment (§ 157(b)(1)) or by proposed findings of fact and conclusions of law (§ 157(c)(1))." *Decision* at page 343. 28 U.S.C. § 157(b)(1) grants to the bankruptcy courts the authority to determine all core proceedings under title 11 or arising in cases under title 11. Section 157(b)(2) contains a non-exclusive list of examples of core proceedings and includes, in § 157(b)(2)(A) and (*O*), two catch-all provisions, which bring many related proceedings into the "core" classification. The bankruptcy courts may make final determinations concerning all core proceedings; however, pursuant to § 157(c)(1), the bankruptcy courts may only submit findings of fact and conclusions of law to the district courts concerning non-core matters.

█ Because the statute does not define "core" and "non-core proceedings", the courts have developed a test to identify non-core proceedings. The consensus of the courts that have considered the matter is that a non-core proceeding is a proceeding that has all of the following characteristics:

1) It is not specifically identified as a core proceeding under § 157(b)(2)(B) through (N);
2) The cause of action existed prior to the filing of the bankruptcy petition;
3) The cause of action would continue to exist independent of the provisions of title 11; and
4) The parties' rights, obligations, or both, are not significantly affected as a result of the filing of the bankruptcy petition.

*See* discussion at *Decision*, page 12. *See also Hughes–Bechtol, Inc. v. Air Enterprises, Inc. (Matter of Hughes–Bechtol),* 107 B.R. 552, 556 (Bankr.S.D.Ohio 1989); *Matter of Walton,* 104 B.R. 861, 864 (Bankr.S.D.Ohio 1988).

The Bankruptcy Court concluded that the portions of the causes of action asserted by Appellee and related to work performed pre-petition could be properly characterized as non-core proceedings. *Decision* at page 346. Nevertheless, the Bankruptcy Court concluded that the adversary proceeding itself should be treated as a core proceeding, largely because that court found that the majority of the work performed under the contract was performed postpetition and determined that causes of action arising postpetition arise "in a case" and are, accordingly, core proceedings. *Decision* at page 346.

█ This Court notes at the outset that the adversary proceeding initiated by Appellee against Appellants in the Bankruptcy Court is one proceeding, even though the causes of action relate to work performed both pre- and postpetition. Accordingly, the Court must determine whether that proceeding, considered *in toto*, is a core or a non-core proceeding. The Court agrees with the Bankruptcy Court's conclusion that the portion of the adversary proceeding related to pre-petition work would be a non-core proceeding if considered alone and adopts the analysis of the Bankruptcy Court with respect to that conclusion. Additionally, the Court notes that Appellants do not dispute the bankruptcy court's finding that 96 percent of the contract work was performed postpetition. The Court notes, then, that the issue presented is whether an adversary proceeding arising from actions related to a pre-petition contract pursuant to which the overwhelming majority of work was performed postpetition is a core proceeding.

█ The issue is most easily resolved by determining, through the application of the four factors set forth above, whether the proceeding is non-core. With respect to the first factor, the Bankruptcy Court concluded that the pre-petition portion of the adversary proceeding does not fall within one of the provisions of 28 U.S.C. § 157(b)(2)(B) through (N). *Decision* at page 345. The bankruptcy court further concluded that the postpetition portion of the adversary proceeding is identified as core by § 157(b)(2)(E), because it creates the potential for an order to turn over property of the estate. *Decision* at page 348. This Court agrees with those conclusions.

█ With respect to the second factor, specifically whether the cause of action existed prior to the filing of the bankruptcy petition, the Court will consider the causes

of action asserted in the adversary proceeding as arising simultaneously with the performance of the contract work. Hence, if 96 percent of the contract work was performed postpetition, 96 percent of the causes of action related to the work also arose postpetition. Stated more simply, the substantial majority of the events giving rise to Appellee's causes of action occurred during the pendency of the bankruptcy case. Hence, the application of the second factor does not identify the adversary proceeding in question as a non-core proceeding.

Because the courts have interpreted "core proceeding" broadly, they have declined to find that a proceeding is non-core unless it possesses all of the characteristics of a non-core proceeding set forth above. *See, e.g., Commercial Heat Treating of Dayton, Inc. v. Atlas Industries, Inc. (Matter of Commercial Heat Treating of Dayton, Inc.)*, 80 B.R. 880 (Bankr.S.D.Ohio 1987). Accordingly, the Court notes that an analysis of the third and fourth factors is not necessary. Nevertheless, the Court will address those factors briefly.

As to the third and fourth factors, which address the viability of the proceedings outside of the bankruptcy case and the affects of the filing on the parties' rights and obligations, the Bankruptcy Court correctly noted that the majority of the causes of action asserted in the adversary proceeding could exist independent of the bankruptcy case. *Decision* at page 348. One notable exception is Appellee's allegation that Appellants violated the automatic stay of 11 U.S.C. § 362, an allegation that exists only in the context of a bankruptcy case. The Bankruptcy Court considered the third and fourth factors together and concluded that the adversary proceeding in question is a core proceeding:

> ... because an entity, the debtor-in-possession, which came into existence only during the administration of a bankruptcy estate (§ 157(b)(2)(A)), continued and concluded a construction contract using estate assets, including assets subject to a court approved cash collateral order, while receiving the protection of the automatic stay, in an attempt to liquidate assets of the estate (§ 157(b)(2)(*O*)) and

is, thus, entitled to obtain a determination of the rights and obligations of the parties and of the estate (§ 157(b)(2)(E)) as a core proceeding.

*Decision* at page 348. This Court adopts the analysis of the Bankruptcy Court with respect to the application of the third and fourth factors.

The Court notes that the majority of cases involving determinations of core status for causes of action arising both pre- and postpetition have turned on an evaluation of the relative portion of the causes of action that have arisen postpetition. *See, e.g., Sibarium v. NCNB Texas National Bank*, 107 B.R. 108, 115 (N.D.Texas 1989) and other cases cited by the Bankruptcy Court at *Decision*, pages 347–48. The outcomes of those cases support a conclusion that where the preponderance of the events giving rise to the causes of action has occurred postpetition, the proceeding is properly characterized as a core proceeding.

### III. *Conclusion*

Based upon its conclusion that the adversary proceeding in question is a core proceeding the Court hereby AFFIRMS the decision of the Bankruptcy Court.

IT IS SO ORDERED.