In re HUGHES–BECHTOL,
INC., Debtor.

HUGHES–BECHTOL, INC., Plaintiff,

v.

The STATE OF OHIO

The Department of Rehabilitation
and Correction

The Department of Administrative
Services, Division of Public
Works

The State Architect, Division
of Public Works

Lorenz and Williams, Inc., KZF,
Inc., A Joint Venture

Lorenz and Williams, Inc.

KZF, Inc.

Ruscilli Construction Company, The
Sherman R. Smoot Company, A
Joint Venture

Ruscilli Construction Company

The Sherman R. Smoot Company,
Defendants.

Bankruptcy No. 3–88–02492.
Adv. No. 3–89–0309.

United States Bankruptcy Court,
S.D. Ohio, W.D.

June 30, 1992.

Mark T. D'Alessandro, Columbus, Ohio, for Ohio Bldg. Authority.

Mark K. Merkle, Columbus, Ohio, for Ruscilli Const. Co./Sherman R. Smoot Co., Inc., a Joint Venture.

Thomas R. Noland, Dayton, Ohio, for debtor.

Steven W. Ritz, Columbus, Ohio, for Ohio Dept. of Rehabilitation and Correction.

Jerry K. Kasai, Columbus, Ohio, for Department of Administrative Services, Div. of Public Works and the State Architect, Div. of Public Works.

John G. Witherspoon, Jr., Dayton, Ohio, for Lorenz and Williams, Inc., and co-counsel for Lorenz and Williams, Inc. and KZF, Inc., a Joint Venture.

Thomas S. Shore, Jr., Cincinnati, Ohio, for KZF, Inc. and co-counsel for Lorenz and Williams, Inc. and KZF, Inc., a Joint Venture.

DECISION ON ORDER DENYING MOTIONS REQUESTING THAT PROCEEDING BE HELD TO BE NON-CORE, DENYING MOTION TO STRIKE JURY DEMANDS, AND GRANTING MOTIONS TO ABSTAIN

THOMAS F. WALDRON, Bankruptcy Judge.

Presently pending are motions requesting that this court determine whether this proceeding is core or non-core and motions requesting that this court abstain, Defendants' Ohio Department Of Administrative Services, The State Architect And The Ohio Department Of Rehabilitation And Correction, Motion For Determination As To Non-Core Proceeding And For Abstention (Doc. 152) and Renewed Motion And Supplemental Memorandum Of Defendant Ruscilli Construction Company/The Sherman R. Smoot Company, Inc., Individually And As A Joint Venture Composed Of: Ruscilli Construction Company And The Sherman R. Smoot Company, Inc., For Core/Non-Core Determination And Abstention, Or, In The Alternative, For Withdrawal Of Refer-

ence (Doc. 161). In addition, the Plaintiff's Motion To Strike All Jury Demands Filed By All Defendants is pending before this court (Doc. 163).[1]

## FACTUAL BACKGROUND

The plaintiff, Hughes–Bechtol, Inc. (Hughes), a chapter 11 debtor in possession initiated this adversary proceeding by filing a complaint which sought damages based on alleged causes of action in contract, tort, violations of the automatic stay, and turnover. This complaint was subsequently amended (Doc. 95). The named defendants include: the State of Ohio, the Department of Rehabilitation and Correction (the DRC), the Department of Administrative Services, Division of Public Works (ODAS), the State Architect, Division of Public Works (SA) (collectively the State Defendants), Ruscilli Construction Company (Ruscilli), the Sherman R. Smoot Company (Smoot), a joint venture composed of Ruscilli and Smoot, Lorenz & Williams, Inc. (Lorenz), KZF, Inc. (KZF), and a joint venture composed of Lorenz and KZF.

In two previous decisions this court concluded, in relevant part, that this court has jurisdiction in this proceeding, *Hughes–Bechtol, Inc. v. Ohio (In re Hughes–Bechtol, Inc.)*, 124 B.R. 1007, 1015–16 (Bankr. S.D.Ohio 1990), that the State of Ohio and its agencies waived their sovereign immunity by filing proofs of claim, 124 B.R. at 1016–18, and, in connection with motions to dismiss, that Hughes alleged sufficient facts which would support the nexus which substitutes for contractual privity under Ohio law between Hughes and Ruscilli and Smoot, a joint venture, 124 B.R. at 1018–20, and Hughes and Lorenz and KZF, individually and as a joint venture, unpublished decision No. 3–88–02492, Adv. 3–89–0309 (Bankr.S.D.Ohio June 24, 1991).

The court has previously discussed the plaintiff's causes of action, consisting of 105 paragraphs and 51 pages, *see* 124 B.R. at 1011–14, and will not repeat that discussion in this decision.

## LEGAL ANALYSIS

### A. 28 U.S.C. § 157—Core/Non–Core

 The category of non-core proceedings is extremely limited; thus, an examination of the characteristics existing in non-core proceedings will be of assistance. *In re Walton*, 104 B.R. 861, 864 (Bankr. S.D.Ohio 1988). A non-core proceeding is identified by the following characteristics— a proceeding filed in the bankruptcy court alleging a cause of action which:

1) is not *specifically* identified as a core proceeding under § 157(b)(2)(B) through (N),

2) existed prior to the filing of the bankruptcy case,

3) would continue to exist independent of the provisions of Title 11, and

---

1. The parties' have filed the following memoranda in support of their motions and respective positions: Plaintiff's Memorandum In Opposition To State's Motion For Determination As To Non–Core Proceeding And For Abstention (Doc. 165); Plaintiff's Memorandum In Opposition To Renewed Motion And Supplemental Memorandum Of Defendant Ruscilli Construction Company/The Sherman R. Smoot Company, Inc., Et Al., For Core/Non-core Determination And Abstention, Or, In The Alternative, For Withdrawal Of Reference (Doc. 166); State Defendants' Reply To Plaintiff's Memorandum In Opposition To State Defendants' Motion For Determination As To Non–Core Proceeding And For Abstention (Doc. 173); Reply Memorandum Of Defendant Ruscilli Construction Company/The Sherman R. Smoot Company, Inc. Individually And As A Joint Venture, To Plaintiff's Memorandum In Opposition To Defendant's Renewed Motion And Supplemental Memorandum For Core/ Non–Core Determination And Abstention, Or, In The Alternative, For Withdrawal Of Reference (Doc. 172); Memorandum Of Defendant Ruscilli Construction Company/The Sherman R. Smoot Company, Inc. Individually And As A Joint Venture, In Opposition To Plaintiff's Motion To Strike All Jury Demands Filed By All Defendants (Doc. 168); Final Memorandum Of Plaintiff Regarding The Issues Set For Oral Argument pursuant To The Court Order Entered January 10, 1992 (Doc. 178).

The defendants, KZF, Inc. and Lorenz & Williams, Inc., have filed a Memorandum Of KZF Incorporating The Argments Of DAS and Ruscilli/Smoot (Doc. 177) and Memorandum Of Defendant Lorenz & Williams, Inc. Incorporating The Motions And Arguments Of Other Parties On The Core/Non-Core And Jury Demand Issues (Doc. 180) which incorporate the motions and supporting memoranda of the other defendants.

4) the parties' rights, obligations, or both are not significantly affected as a result of the filing of the bankruptcy case.

*Hughes–Bechtol, Inc. v. Air Enterprises, Inc. (In re Hughes–Bechtol, Inc.)*, 107 B.R. 552, 556 (Bankr.S.D.Ohio 1989); *Walton*, 104 B.R. at 864; *Commercial Heat Treating of Dayton, Inc. v. Atlas Indus., Inc. (In re Commercial Heat Treating of Dayton, Inc.)*, 80 B.R. 880, 888 (Bankr.S.D.Ohio 1987). Congress intended to interpret "core proceedings" broadly; thus, proceedings which do not contain all the characteristics of a non-core proceeding will be determined to be core. *Commercial Heat Treating of Dayton, Inc.*, 80 B.R. at 880.

■ In determining whether this proceeding is core or non-core, both the form and the substance of the proceeding must be examined. *Michigan Employment Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio, Co.)*, 930 F.2d 1132, 1144 (6th Cir.1991). This proceeding is an action for breach of contract, tort, violations of the automatic stay, and turnover. At the outset this court notes that a proceeding, as a whole, is determined to be core or non-core; however, in reaching this determination, each cause of action and each cause of action asserted against each defendant, is separately examined.

■ Hughes asserts that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C), (E), (G), and (O). Although this proceeding may come within subsections (A) and (O), as previously stated, the first characteristic of a non-core proceeding is one which does not specifically come within subsections (B) through (N) of § 157(b)(2). With respect to subsection (B)—allowance or disallowance of claims against the estate, the court notes that the State of Ohio and its agencies are the only defendants who have filed a proof of claim in this bankruptcy. Therefore, with respect to the State of Ohio and its agencies, this is a core proceeding. The issues in this proceeding, with regard to the State of Ohio and its agencies, do not "resemble state-law contract claims brought by a bankrupt corporation" rather they resem-

ble "creditors' hierarchically ordered claims to a pro rata share of the bankruptcy *res.*" *Hughes–Bechtol*, 107 B.R. at 557 (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 2798, 106 L.Ed.2d 26 (1989)). Having determined that this proceeding is core with respect to the State, it is unnecessary to address Hughes' contentions, with respect to the State, that this proceeding is core under any of the other subsections of § 157(b)(2), nor is it necessary to examine the remaining characteristics of non-core proceedings. *See Commercial Heat Treating of Dayton, Inc.*, 80 B.R. at 880.

With respect to defendants Lorenz and KZF, individually and as a joint venture, and Ruscilli and Smoot, individually and as a joint venture (the Remaining Defendants), however, because none of them have filed a proof of claim in this bankruptcy, this proceeding does not come within subsections (B) or (C). Therefore, with respect to the Remaining Defendants, the court must determine whether this proceeding is core under Hughes' other contentions, (E)—turn over of property of the estate and (G)—motions to terminate, annul, or modify the automatic stay.

At this point, it is helpful to examine the second characteristic of a core proceeding, whether the cause of action existed prior to the filing of the bankruptcy case. Recently, this court in *Hughes–Bechtol, Inc. v. Construction Management, Inc. (In re Hughes–Bechtol, Inc.)*, 132 B.R. 339 (Bankr.S.D.Ohio 1991), *aff'd*, No. C3–91–476 (S.D.Ohio May 7, 1992) examined the foregoing list of non-core characteristics in determining whether a proceeding alleging causes of action for violation of the stay and causes of action for prepetition and postpetition breach of contract and tortious interference with business relations was core or non-core. In that proceeding, it was undisputed that four percent of the work on the contract was performed prepetition, and ninety-six percent of the work was performed postpetition. 132 B.R. at 346 n. 5. After review of applicable case law, this court held:

[R]esolution of the issue of whether a proceeding which contains both prepetition and postpetition causes of action is core or non-core is aided not only by an examination of the *time period* when the contract was entered, "pre" or "post" petition, but also by an analysis of the *nature and the extent of the contract* at issue. This court finds it significant to note that decisions which have concluded that proceedings which allege causes of action for both prepetition and postpetition breaches of contracts are non-core proceedings have involved contracts where the obligations of the parties were essentially completed prepetition and the postpetition transactions of the parties were limited, in some cases merely to the debtor's demand for payments pursuant to the contract.

In contrast, the decisions which have concluded that proceedings which allege causes of action for both prepetition and postpetition breaches of contracts are core proceedings, have involved significant and repeated postpetition transactions between a debtor, particularly a debtor-in-possession, and other parties pursuant to contracts which continued existing rights and obligations or established new rights and obligations among the parties.

*Hughes–Bechtol,* 132 B.R. at 347 (emphasis in original; citations omitted). In that decision the court determined that the postpetition portion of the cause of action was core because the contract was not "essentially concluded prepetition." 132 B.R. at 347. It was further determined:

[T]he Contract continued existing rights and obligations and established new rights and obligations among the parties in connection with the postpetition completion of a construction project. The Contract involved significant and repeated postpetition transactions among Hughes and the Defendants, which Hughes claims include, not only the alleged violations of the automatic stay,

but also a variety of activities for "extra work not required by the contract," "changes in the work or scope of the work," "redesigned plans and specifications," "failure to respond timely or adequately to requests for information, by untimely processing submittals, shop drawings, and change orders," and "improper scheduling and coordination of the work."

*Hughes–Bechtol,* 132 B.R. at 347.

In the proceeding *sub judice,* in the Affidavit Of James E. Baumgardner In Support Of Non–Core Determination (Baumgardner Affidavit) it is stated that "Hughes' work under the Contract and change orders was over 92% complete at the time Hughes filed for relief under chapter 11 on August 3, 1988" and that "Hughes certified [on a pay request] that the base Contract was 94% complete as of July 27, 1988." (Doc. 172, aff., para. 6 and 7). Hughes does not dispute these percentages with regard to *prepetition* claims [2]; however, Hughes, in the Affidavit Of Debtor In Possession In Opposition To Non–Core Determination (Quast Affidavit), states that its "claims for violation of stay, turnover, and collection of *postpetition* progress payments and retainage and for related delay claims are *postpetition* claims" and that it is "not seeking *prepetition* contract accounts receivable." (Doc. 166, Ex. 4, para. 6 and 7, emphasis added). It is further sworn:

8. [Hughes'] claims in the amended complaint represent:

a. unpaid progress payments *earned* postpetition

b. unpaid retainage which did not *accrue* until postpetition completion and acceptance of the project

c. related delay claims which did not *ripen* until the postpetition Article VIII hearing; and that

9. [Hughes] put Defendants on notice from the inception of errors and omissions in the plans but was forced to

---

2. There being no disputes between these affidavits, this court will accept the above verified statements as fact for purposes of this hearing. *See generally Ledford v. Tiedge (In re Sams),*

106 B.R. 485, 491–92 (Bankr.S.D.Ohio 1989); *Talbot v. Warner (In re Warner),* 65 B.R. 512, 516 (Bankr.S.D.Ohio 1986).

complete the contract despite the impossibility of performance due to said errors and omissions. The State issued various change orders in October, 1990 to correct plan defects.

(Doc. 166, Ex. 4, emphasis added).

In examining the second characteristic of non-core proceedings, this court notes that, Hughes, as demonstrated in the Quast Affidavit, characterizes its causes of action as postpetition. In the Quast Affidavit, the phrases "earned" postpetition, did not "accrue" until postpetition, and did not "ripen" until postpetition are used. The "earning" of funds is indicative of claims which arose postpetition. *See Hughes–Bechtol,* 132 B.R. at 346–49. Likewise, use of the word "accrue" indicates claims which arose postpetition; however, use of the word "ripen" is indicative of prepetition contract performance or of claims arising prepetition with claims actually materializing postpetition. Therefore, this court concludes that some of the causes of action alleged in the complaint existed prepetition; however, other causes of action arose postpetition. As determined in *Hughes–Bechtol,* 132 B.R. at 346–48, this conclusion, in itself, does not resolve the issue of whether this proceeding is core or non-core. The resolution of this issue, as it was in *Hughes–Bechtol,* 132 B.R. at 346–48, involves the determination of whether the postpetition transactions between Hughes and the Remaining Defendants were repetitive and significant and whether these transactions affected or continued existing rights and obligations and established new rights and obligations among the parties in connection with the postpetition completion of the construction project. *Hughes–Bechtol,* 132 B.R. at 347.

Upon review of the Quast Affidavit alone it is difficult to determine the extent of the postpetition contract and transactions between Hughes and the Remaining Defendants; however, the Baumgardner Affidavit has broken the Quast Affidavit into specific amounts and times. These computations contained in the Baumgardner Affidavit have not been disputed by Hughes. The Baumgardner Affidavit states:

8. In the Amended Complaint, Hughes claims damages of $1,121,000.00.

9. Approximately 10% of the alleged claim, $121,000.00, apparently relates to Hughes' alleged claims for violation of stay, turnover, collection of postpetition progress payment and retainage. The $121,000.00 breaks down as follow: (1) Hughes seeks one postpetition progress payment (Pay Request No. 29, in the amount of $74,930.45, submitted by Hughes to the State in August, 1991); and (2) Hughes seeks its retainage, in the amount of $45,711.00, which was withheld by the State prior to August 3, 1988 pursuant to the terms of the Contract. (Hughes' Pay Request No. 30 for retainage in the amount of $45,711.00 was submitted to the State in August, 1991). As is indicated in the October 25, 1991 letter from counsel for the State to counsel for Hughes, a copy of which is attached to the Hughes memorandum and also attached hereto as Exhibit B, the State is ready, willing and able to process Hughes' final Pay Request and to release Hughes' retainage upon submission by Hughes of properly completed paperwork.

10. The balance of the damages (approximately·90% or $1,000,000.00) asserted by Hughes in the Amended Complaint appear to be based on alleged causes of action in contract and tort for "extra costs" and "delay damages." Hughes asserted these alleged claims prior to August 3, 1988.

11. Hughes claims that it incurred "extra costs," not within their contractual obligations, for an unreasonable amount of fittings, transitions and offsets in excess of their original estimate and "extra costs" to reroute and resize the ductwork because of the alleged negligence and breaches of the various defendants relating to defective plans and specifications. Hughes documented and asserted this claim on various occasions prior to August 3, 1988. Attached hereto and marked Exhibit C is a true and accurate copy of Hughes' letter of April 26, 1988 (with attachments) which

presented this claim in the amount of $291,267.00.

12. Hughes' claim for "delay damages" was also asserted prior to August 3, 1988. In the Amended Complaint, Hughes claims it suffered delay damages as a result of the alleged negligence and breaches of the various defendants which caused Hughes not to be able to complete the Project by April 28, 1988.

13. Attached hereto and marked Exhibit D is a true and accurate copy of the March 28, 1988 letter from Hughes to Ruscilli/Smoot in which Hughes claimed that it is entitled to delay damages for additional costs incurred in the amount of $31,528.00 per month.

14. Also attached hereto and marked Exhibit E is a true and accurate copy of Hughes' letter of May 16, 1988 to the State in which Hughes claimed that it was being economically damaged and was entitled to damages because the Contract was not completed by April 22, 1988 and threatened legal action against both the State and Ruscilli/Smoot in connection with the claim.

15. Also attached hereto as Exhibit F is a true and accurate copy of Hughes' letter of June 1, 1988 to Ruscilli/Smoot in which it again claimed it is being damaged in the amount of $31,528.00 per month due to delay.

16. The change orders issued by the State in October, 1990 simply authorized Hughes to do additional work to balance the heating system so that the heat would be more evenly distributed throughout the buildings. These change orders to the Contract add a net amount of approximately $34,000, or 1.1%, to the Contract price.

This court has quoted extensively from the Baumgardner Affidavit not to place emphasis upon the dollar amount of work performed or the percentages of the contract which arose prepetition or postpetition, although these figures play a part in this court's analysis, but because the Baumgardner Affidavit provides detailed information on the *extent* of Hughes' postpetition contract and transactions with the Remaining Defendants.[3]

 Hughes' breach of contract and tort claims are not specifically identified as a core proceeding under § 157(b)(2)(B) through (N). As this court previously stated in *Hughes–Bechtol*, " 'state law contract claims that do not specifically fall within the categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)–(N) are related proceedings under § 157(c) even if they arguably fit within the literal wording of the two catch-all provisions, sections 157(b)(2)(A) and (O).' " 132 B.R. at 345 (quoting *Piombo Corp. v. Castlerock Properties (In re Castlerock Properties)*, 781 F.2d 159, 162 (9th Cir.1986)). This court, however, has previously noted that a cause of action requesting turn over of postpetition accounts receivable constitutes a core proceeding under subsection (E), see *Hughes–Bechtol*, 132 B.R. at 346–49. Here, although the Remaining Defendants are not directly withholding payments claimed by Hughes, there has been extensive involvement on the part of these defendants, not only prepetition, but also postpetition, as demonstrated by their power to control Hughes' "economic life or death," *Hughes–Bechtol*, 124 B.R. at 1020, by signing or certifying documents permitting Hughes to receive monies. The Remaining Defendants' continuing postpetition control is not obviated by recognizing that it is the State that would actually pay the funds to Hughes. Thus, the contract at issue in this proceeding not only continued existing rights and obligations but also established new rights and obligations among the parties in connection with the postpetition completion of the construction project. The contract, considered as a whole, continued and established significant and repeated postpetition transactions among Hughes and the Remaining Defendants.

---

**3.** While providing more detail than the Quast Affidavit, the court notes that the Baumgardner Affidavit does not create any factual conflicts.

With regard to the third and fourth characteristics of a non-core proceeding, the court finds that these breach of contract and tort actions against the Remaining Defendants would continue to exist independent of the provisions of Title 11 and the parties' rights and obligations have not been significantly affected by the filing of this bankruptcy.

Accordingly, the court concludes that Hughes' prepetition causes of action in contract and tort against the Remaining Defendants are non-core but the postpetition causes of action are core proceedings. These causes of action, however, are only part of Hughes' total complaint against the Remaining Defendants.

Hughes additionally alleges that the Remaining Defendants have committed violations of the stay. Proceedings brought pursuant to 11 U.S.C. § 362 are core proceedings. The term "core proceeding" includes any right which was created under Title 11. As the legislative history indicates:

> The automatic stay is *one of the fundamental debtor protections provided by the bankruptcy laws.* It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
>
> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 340, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6296 (emphasis added). The automatic stay is an "integral part of the federal rights created under the Bankruptcy Code, and state created rights have nothing to do with the application of the automatic stay, [thus] there can be no constitutional objection under *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)." *Budget Service Co. v. Better Homes of Virginia Inc.,* 804 F.2d 289, 292 (4th Cir.1986). Although the automatic stay is not specifically designated as a core proceeding under 28 U.S.C. § 157(b)(2)(B) through (N), Section 157(b)(2)(G)—motions to terminate, annul, or modify the automatic stay, indicates that issues related to the automatic stay are core. *Hughes–Bechtol,* 132 B.R. at 348.

Accordingly, as a result of the court's conclusion that the allegations concerning the postpetition contract and tort causes of action are core with respect to the State and its agencies, the court's determination that the alleged repeated postpetition activities among Hughes and the Remaining Defendants are core, and the court's determination that the alleged stay violations are core, this court concludes that this proceeding, considered *in toto,* is core because the core aspect "heavily predominates" and the disputed non-core aspects are not significant. *Hughes–Bechtol,* 132 B.R. at 348 (quoting *Sibarium v. NCNB Texas Nat'l Bank,* 107 B.R. 108, 115 (N.D.Tex.1989)).

**B. Jury Demands**

Hughes has moved to strike the jury demands filed by Ruscilli and Smoot, individually and as a joint venture, Lorenz, Lorenz and KZF, a joint venture, and the DRC. Hughes contends that these parties' "failure to request a withdrawal of the proceeding when demanding a jury constitutes a waiver of the right to a jury trial" and cites the Tenth Circuit's decision in *Stainer v. Latimer (In re Latimer),* 918 F.2d 136 (10th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 186, 116 L.Ed.2d 147 (1991). (Doc. 163 at 2). In *Latimer,* the court concluded that the defendant's jury trial request was properly denied because the defendants had made an oral, rather than a written, request for a jury trial and further concluded that, even if the defendants had made a proper jury demand, they

waived their right to a jury trial. The court stated:

[T]o avoid waiver, parties seeking a jury trial must combine their request for a jury trial with a request for transfer to the district court. Accordingly, the district court was not clearly erroneous in deciding the request for a jury trial without a request for transfer waived the right to a jury trial.

918 F.2d at 137 (citations omitted).

■ The parties in this proceeding have made timely written jury demand requests. Fed.R.Civ.P. 38(b).[4] The parties' jury demands were not made later than ten days after the service of the "last pleading directed to such issue." Fed.R.Civ.P. 38(b). Further, this court is unable to find the "plain language"[5] of the applicable statutory authority or rules which mandates that a jury demand must be coupled with a simultaneously filed request for transfer.[6] *See* 28 U.S.C. § 157(d), Fed.Bankr.R.P. 5011(a). Accordingly, this court respectfully declines to follow the *Latimer* court and concludes that Ruscilli and Smoot, individually and as a joint venture, Lorenz, and Lorenz and KZF, a joint venture, have properly requested a jury trial. Furthermore, the actions brought against Ruscilli and Smoot, individually and as a joint venture, Lorenz, and Lorenz and KZF, a joint venture, are legal actions, and thus, these parties are entitled to a jury. *See Hughes–Bechtol*, 107 B.R. at 563–64 (right to jury trial).

■ With respect to the DRC, however, it has effectively waived its rights to a jury. The State of Ohio filed four original proofs of claim together with one supplemental proof of claim and one amended proof of claim. (Doc. 78). By filing these proofs of claim, the State of Ohio brought

itself and its agencies within the equitable jurisdiction of this court and has consequently waived its entitlement to a jury trial. *Langenkamp v. Culp*, —— U.S. ——, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990). *Cf. Hughes–Bechtol*, 124 B.R. at 1015–18 (filing of proofs of claim waive sovereign immunity of State and its agencies).

## C. Abstention

■ Prior to the substantive determination of the abstention issue, the court notes that bankruptcy courts are presently authorized to enter binding orders on motions to abstain and appeal of these orders to the district court is permitted. *Nationwide Roofing & Sheet Metal, Inc. v. Cincinnati Ins. Co. (In re Nationwide Roofing & Sheet Metal, Inc.)*, 130 B.R. 768, 776–778 (Bankr.S.D.Ohio 1991).

The State Defendants and Ruscilli and Smoot, individually and as a joint venture, have requested that this court abstain under 28 U.S.C. § 1334(c)(2) and alternatively under 28 U.S.C. § 1334(c)(1). This court has previously noted:

Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State Court would clearly serve an important countervailing interest."

*Hughes–Bechtol, Inc.*, 107 B.R. at 559 (quoting *Colorado River Water Conserva-*

---

**4.** (b) Demand. Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party. *See* this court's Standing Order Governing Pretrial And Trial Procedures (Doc. 145, governing jury demands).

**5.** "[T]he fundamental canon [of] statutory interpretation begins with the language of the statute itself." *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990).

**6.** Ruscilli, Smoot, individually and as a joint venture, did file an alternative motion for withdrawal of reference (Doc. 161) subsequent to its jury demand.

*tion Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)).

 Initially, the parties request that this court abstain under § 1334(c)(2), the mandatory abstention provision. As this court previously held in *Nationwide,* 130 B.R. at 778, the following requirements must be present for mandatory abstention:

1) a timely motion to abstain must be filed by a party to the proceeding;

2) the proceeding must be based upon state law;

3) the proceeding must be "related to" a case under Title 11;

4) the action could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. § 1334;

5) an action in state court has been commenced; and

6) the state court action can be timely adjudicated.

*Accord Marshall v. Michigan Dept. of Agriculture (In re Marshall),* 118 B.R. 954, 958 (W.D.Mich.1990); *Gabel v. Engra, Inc. (In re Engra, Inc.),* 86 B.R. 890, 894 (S.D.Tex.1988). Each of these requirements must be satisfied before a court may abstain from hearing a proceeding. *Nationwide,* 130 B.R. at 778.

 This proceeding fails to satisfy all the requirements necessary for mandatory abstention. Although several of the factors meet the mandatory abstention requirements—a timely motion for abstention was filed, this proceeding is predominantly based upon state law, and this action could not have been commenced in federal court absent jurisdiction under 28 U.S.C. § 1334—this is a core proceeding, and absent extraordinary circumstances, this court's duty pursuant to federal law and the specific directive contained in the Standing Order Of Reference entered in this district requires this court to determine matters properly before it. *Hughes-Bechtol,* 107 B.R. at 560. Further, an action in state court has not been commenced. Although administrative remedies have been sought by Hughes as contemplated by Ohio Revised Code § 153.12, and pursuant to these administrative reme-

dies an "Article VIII hearing" was held on December 15, 1988 (Doc. 95, paras. 75–77), this court concludes that such an informal hearing, which is not held in a court of record and does not involve all the parties present in this adversary proceeding, does not satisfy the requirement of an "action in state court." As a consequence, there is no pending state court action, and there has been no evidence that a state court action could be timely adjudicated. *See Nationwide,* 130 B.R. at 779. Accordingly, the court determines that mandatory abstention pursuant to § 1334(c)(2) is not required.

The parties alternatively request that this court abstain pursuant to § 1334(c)(1), permissive abstention. A non-exclusive listing of the factors which courts consider in determining whether to abstain under § 1334(c)(1) include:

1) the effect or lack of effect on the efficient administration of the estate if a court abstains;

2) the extent to which state law issues predominate over bankruptcy issues;

3) the difficulty or unsettled nature of the applicable state law;

4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;

5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

7) the substance rather than form of an asserted "core" proceeding;

8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

9) the burden of this court's docket;

10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

11) the existence of a right to a jury trial;

12) the presence in the proceeding of nondebtor parties; and,

13) any unusual or other significant factors.

*Nationwide,* 130 B.R. at 780.

█ Applying the foregoing, the court notes at the outset that, although Hughes filed this chapter 11 case with the intention of reorganizing and returning to continuing business relationships as an ongoing business in the construction industry, it has been clear for some time that Hughes is not now, nor is there any reason to believe it will be, an ongoing business. Rather, Hughes is in the process of liquidating as a chapter 11 debtor in possession, and this adversary proceeding, like several others, merely represents an attempt to obtain assets and liquidate claims. The Bankruptcy Code's concern to centralize and monitor litigation in the same forum where the debtor in possession is attempting to formulate and obtain confirmation of a reorganization plan is less compelling in such circumstances. This factor favors permissive abstention.

Abstention in this proceeding will not adversely affect efficient administration of this estate, but in fact may enhance the disposition of this adversary. Although this proceeding, overall, is determined to be core, there are difficult and unsettled issues of applicable state law. The mere existence of such state law issues does not necessarily require abstention; however, bankruptcy courts often abstain when adjudication of the proceeding requires resolution of "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 815, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). "It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* 96 S.Ct. at 1245.

This proceeding, the crux of which pertains to breach of contract and tort causes of action under a public works contract, involves both unsettled state law issues and issues pertaining to state policy. Although this court, in connection with a motion to dismiss, held that the nexus requisite for the substitution of the doctrine of privity of contract, as noted but not expounded upon by the Ohio Supreme Court in *Floor Craft Floor Covering, Inc. v. Parma Com. Gen. Hospital Assoc.,* 54 Ohio St.3d 1, 560 N.E.2d 206 (1990) was effectively plead by Hughes, further application of this unsettled area of state law, in a context other than a motion to dismiss, is more appropriate for development by a court of the State of Ohio. This factor favors permissive abstention.

Further, determination of the issues in this proceeding may be disruptive of efforts to establish a coherent state policy. Although the issues in this proceeding are not of transcendent importance, the State of Ohio has established a court to handle all claims brought against the State. Just as Congress has established the bankruptcy court as a specialized court designed to use its expertise in efficiently handling bankruptcy issues, the legislature of the State of Ohio has established the Ohio Court of Claims to handle litigation involving the State, including the resolution of construction contract disputes. O.R.C. § 2743.01–.72; O.R.C. § 153.12(B).

Chapter 2743 of the Ohio Revised Code sets forth the provisions pertaining to the Court of Claims. In the Court of Claims, the State has waived its immunity and has consented to have its liability determined. O.R.C. § 2743.02. The Court of Claims has exclusive, original jurisdiction in all civil actions against the State and has exclusive jurisdiction of the causes of action of all parties in civil actions that are removed to the court.[7] O.R.C. § 2743.03(A). The Court of Claims is the more appropriate

---

7. All the parties in this proceeding may be made a party in the Court of Claims, and further, the Court of Claims has "full equity powers in all actions within its jurisdiction and may entertain and determine all counterclaims, cross-claims, and third-party claims." O.R.C. § 2743.03(A).

court to handle claims against the State and to resolve claims involving the state's public works contracts.[8] Furthermore, any determination of Hughes' claim for punitive damages against the State, despite current law which disallows punitive damages against the State, *see Spires v. Lancaster,* 28 Ohio St.3d 76, 502 N.E.2d 614, 617–18 (1986), should be addressed by the state court system. As the parties' references to *Herbert Ernst Jr. Trustee in Bankruptcy v. Dept. of Admin. Services,* No. 87–08289 (Ohio Court of Claims Sept. 27, 1989) reveal, the Court of Claims has had experience with all of the issues raised in this proceeding. This factor weighs in favor of permissive abstention.

Furthermore, although the State and its agencies have waived their jury trial rights, Ruscilli and Smoot, individually and as a joint venture, Lorenz, and Lorenz and KZF, a joint venture, are entitled to a jury trial. The Sixth Circuit recently held that bankruptcy courts are not authorized to conduct jury trials. *Rafoth v. Nat'l Union Fire Ins. Co.* (*In re Baker & Getty Fin'l Services, Inc.*), 954 F.2d 1169, 1173 (6th Cir.1992). This is so regardless of whether the proceeding is core or non-core. *Id.* at 1173 n. 10. *Accord Hughes–Bechtol,* 107 B.R. at 566–73. As a result, even if this court conducted all pretrial proceedings, it could not hear significant portions of the claims in this proceeding. Choosing one forum as the situs which can hear all causes of action asserted is efficient and economical for all parties involved. The Court of Claims' authority to conduct jury trials will further contribute to the expeditious disposition of this proceeding.[9] This factor weighs in favor of abstention.

Although some of the factors weighing in favor of abstention are not present in this proceeding, such as the presence of a related proceeding commenced in another court, burden upon this court's docket, and the likelihood that commencement of this proceeding involves forum shopping, unlike mandatory abstention, permissive abstention does not require that each factor contained in the non-exclusive listing of factors must be satisfied before granting a motion for permissive abstention. After considering all of the relevant foregoing factors, the court concludes that the coalescence of the following factors weighs heavily in favor of granting the motions for permissive abstention in this proceeding: the remoteness of this proceeding to the main bankruptcy case at this stage of this liquidating chapter 11 case, the existence of jury trial rights involving nondebtor parties, the unsettled area of state law involving the nexus requisite for substitution of the doctrine of privity pursuant to Ohio law, the claim for punitive damages against the State Defendants despite current state law, the existence of prepetition non-core issues, the inability of this court to determine all the causes of action in this proceeding, and the presence of a single state forum, the Ohio Court of Claims, which possesses particular expertise and comprehensive jurisdiction, to determine all issues in this proceeding.

Accordingly, this court determines that the motions requesting permissive abstention to the Ohio Court of Claims will be GRANTED.

An order in accordance with this decision is simultaneously entered.

SO ORDERED.

8. The contract allegedly breached was a standard form contract (Doc. 173, Ex. 9, Busch Affidavit) utilized by the State.

9. "No claimant in the court of claims shall be entitled to have his civil action against the state determined by a trial by jury. Parties retain their right to trial by jury in the court of claims of any civil actions not against the state." O.R.C. § 2743.11.